[Civil No. 3032.   Filed June 8, 1931.]

[299 Pac. 1034.]

S. H. KRESS & COMPANY, a Corporation, and S. H. KRESS & COMPANY, a Corporation, Insurance Carrier, Appellant, v. THE INDUSTRIAL COMMISSION OF ARIZONA and R. B. SIMS, BURT H. CLINGAN and WILLIAM E. HUNTER, as Members Thereof, Respondents.

Mr. W. L. Barnum and Mr. Robert McMurchie, for Appellants.

Mr. Terrence A. Carson, for Respondents.

LOCKWOOD, J.—S. H. Kress & Company, a corporation, filed a petition for a writ of *certiorari* to review an award of the Industrial Commission of Arizona in favor of Paul Colby in the amount of $514.10. The evidentiary facts in the case are in no way in dispute, the sole question being of the ultimate facts to be deduced therefrom, and the law to be applied to such ultimate facts.

It appears that Colby was a carpenter and cabinet-maker in Tucson. He had a shop of his own, was in the habit of doing cabinet and repair work either for day's wages, or for a fixed sum, and had been employed by petitioner a number of times to make repairs around its place of business. On the occasion out of which the injury in question arose it appears that certain windows in the store of petitioner were not working properly, and its manager called Colby and asked him to fix them, and put them in working order, saying, "Whenever you get time, come over and do it." Nothing was said in regard to any specific price for the performance of the work. Colby started to work the next day and was injured a few hours later.

There is no dispute that the injury arose out of and in the due course of the work. There are two questions only for our consideration: First, was Colby an independent contractor within the meaning of the statute; and, second, if he was not, was his employment casual, and not in the usual course of the trade, business or occupation of the employer? The answers depend upon the interpretation of the following portions of sections 1418 and 1419, Revised Statutes of 1928:

"1418. . . . Where an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such contractor and the persons employed by him, and his subcontractor and the persons employed by the subcontractor, are, within the meaning of this section, employees of the original employer. A person engaged in work for another, and who while so engaged, is independent of the employer in the execution of the work, not subject to the rule or control of the person for whom the work is done, but engaged only in the performance of a definite job or piece of work, and subordinate to the employer only in effecting a result in accordance with the employer's design, is an inde-

pendent contractor and an employer within the meaning hereof.

"1419. . . . The terms 'employee,' 'workman,' and 'operative,' as used herein, mean: . . . every person in the service of any employer subject to this article as defined in the preceding section including aliens and minors legally or illegally permitted to work for hire, but not including a person whose employment is casual and is not in the usual course of trade, business or occupation of the employer."

In the case of *Grabe* v. *Industrial Com., ante,* p. 322, 299 Pac. 1031, we laid down the rule by which to determine whether an injured person is an independent contractor or an employee within the meaning of the Arizona Compensation Law as follows: "Under section 1418, *supra,* if A procures B to do certain work for him which is a part or process in A's trade or business, and retains supervision or control over the work, then B. and all B.'s employees and subcontractors to the Nth degree are, for the purposes of the Compensation Act, employees of A, no matter what the terms or method of employment or compensation. It is obvious that were this not so the beneficent purposes of the Act could and would be easily defeated or evaded by unscrupulous employers through the aid of various dummy intermediaries. The statute therefore brushes aside all forms and subterfuges and provides that one just, simple and definite test. If the work be part of the regular business of the alleged employer, does he retain supervision or control thereof? All other matters are of importance only as they throw light on this question. The evidentiary facts will differ with each case, but the ultimate test remains the same." Let us therefore apply this test to the evidence in this case.

It appears that Colby was asked by petitioner's manager to do the work, a certain definite job, without any previous agreement as to time or terms; that

Colby had been in the habit of working for petitioner previously on various repair jobs of the same general nature; that under such circumstances, in the absence of a fixed contract, it was his custom to charge a regular price per hour for the work; that in this case he was paid for his work on an hourly basis; that after the accident petitioner reported it to the Industrial Commission, stating in the report that Colby was an employee, hired directly by petitioner's manager to do piece work. So far as supervision of the work is concerned, the only direct testimony is the following series of questions and answers:

"Q. But they didn't supervise the work — they didn't tell you what to do? A. What was needed I had to do to them, that was all. They didn't tell me what they needed—no. . . .

"Q. Nobody, while you were doing that work, had anything to say about how it was done, or anything else. You as a mechanic was just turned loose to do this particular work? A. Yes."

We are of the opinion that we cannot say as a matter of law the commission was not justified in holding on this evidence that Colby was an employee at a fixed wage per hour, rather than an independent contractor for a definite sum. While it is true he says that no particular instructions were given to him as to *how* to do the job, that is only the usual custom of any employer with a skilled employee who presumably understands his work, unless some particular question arises. There is nothing to show that petitioner did not have the right to supervise the work and direct Colby in his actions if any necessity therefor had arisen, and the fact that it evidently considered him to be an employee within the meaning of the act is shown by its first report of the accident to the commission.

The second and more important question is whether or not he was within the exception of the Compensa-

tion Act set forth in section 1419, *supra*. Nearly all compensation acts except from their provisions certain classes of so-called "casual" employment. The acts, however, differ considerably in their terms, falling into two general types. The first is that of the English act, where the exception is of an employee "whose employment is of a casual nature *and* who is employed otherwise than for the purpose of the employer's trade or business." (Italics ours.) The second includes statutes like that of Massachusetts as it was before the amendment of 1916, which excluded an employee "whose employment is but casual, *or* is not in the usual course of the trade, business, profession or occupation of his employer." (Italics ours.) While the cases differ as to whether the word "casual," in the various acts, refers to the nature of the employment itself, or to the terms of the contract of employment, they are practically unanimous to the effect that when the conjunctive "and" is used, in order to take the employee out of the benefits of the act the employment must be shown to be both casual (whatever the definition of the word), and outside of the usual course or purpose of the employer's business. It is only when the disjunctive "or" appears that either condition alone bars compensation. *Hill* v. *Begg*, (1908) 1 B. W. C. C. 320; *In re Gaynor*, 217 Mass. 86, L. R. A. 1916A 363, 104 N. E. 339; *Walker* v. *Industrial Acc. Com.*, 177 Cal. 737, L. R. A. 1918F 212, 171 Pac. 954; *Aurora Brewing Co.* v. *Industrial Board*, 277 Ill. 142, 115 N. E. 207; *Herbig* v. *Walton Auto Co.*, 191 Iowa 394, 182 N. W. 204; *Maryland Cas. Co.* v. *Pillsbury et al.*, 172 Cal. 748, 158 Pac. 1031; *Thompson* v. *Twiss*, 90 Conn. 444, L. R. A. 1916E 506, 97 Atl. 328.

It is necessary, therefore, that we examine the wording of our statute carefully to determine the rule to be applied.

The vital part thereof is as follows: "whose employment is casual *and* is not in the usual course of trade, business or occupation of the employer." There may be some question as to whether the words "employment is casual" should be construed to mean "employment is of a casual nature," or "is casually employed," but there can be none that since the conjunctive used is the word "and," in order to take an employee out of the benefit of our act it must appear affirmatively that he was not, at the time of the injury, employed "in the usual course of trade, business or occupation of the employer," whether the employment was casual or not, in any meaning of the word.

Petitioner has not cited to us any cases which discuss the circumstances under which work is "in the usual course of trade, business or occupation of the employer." Respondent, however, has called our attention to the case of *Holmen Creamery Assn.* v. *Ind. Com.*, 167 Wis. 470, 167 N. W. 808. The facts in that case are very similar to those of the case at bar. The injured party therein was hired to make some repairs, consisting of mason work and plastering inside and outside of the building, on a creamery. He had previously worked for the creamery association off and on upon the building, but had never been steadily employed, and it was understood that when the repairs in question were completed the particular employment terminated. He was always hired specially when he did any repair work, and was paid by the hour or day. The court, in determining whether the work was in the usual course of the business or trade of the employer, said: "The defendant Creamery Association was engaged in the business of conducting a creamery. For the proper conduct of such a business a building was necessary. It is the common experience of mankind that build-

ings need repairs from time to time. Indeed, it is so common that the income tax law allows for the deduction of repairs from rentals received, and all business concerns of any magnitude provide for a repair account or a fund to meet such expenses. It is in evidence that the claimant here had several times repaired this building. The making of repairs therefore belongs to the category of things to be expected and provided for. True, repairs come at irregular intervals, and one cannot accurately foretell just when they will be needed. But needed they will be in any business that endures for any considerable length of time. They are therefore a part of the employer's business, to be anticipated and met when necessity or convenience dictates. Being an essential and integral part of every business employing material things in its prosecution, no reason is perceived why one employed to make them should not be classed as an employee of the one for whom they are made. They are essential to the successful prosecution of every business whose implements are subject to the corroding touch of time and a usual concomitant thereof. They are foreseen, provided for, and made, when necessary or convenient. The fact that one cannot exactly foretell just when they will have to be made is immaterial." And the injury was held compensable. See, also, *Caca* v. *Woodruff,* 70 Ind. App. 93, 123 N. E. 120.

The reported cases on this point are far from being in harmony, even in the same jurisdiction. For instance, it is difficult to reconcile the reasoning and conclusions of *Spiers* v. *Elderslie Steamship Co.,* (1909) 2 B. W. C. C. 205, with that of *Johnston* v. *Monasterevan Gen. Store Co.,* 2 B. W. C. C. 183; *State ex rel. Lennon* v. *District Court,* 138 Minn. 103, 164 N. W. 366, with *State ex rel. City of Northfield* v. *District Court,* 131 Minn. 352, Ann. Cas. 1917D 866,

155 N. W. 103, and *Globe Indem. Co.* v. *Industrial Acc. Com.*, 45 Cal. App. 328, 187 Pac. 452, with *Walker* v. *Industrial Acc. Com., supra,* and *London & Lancashire G. & A. Co.* v. *Industrial Acc. Com.*, 173 Cal. 642, 161 Pac. 2.

It seems to us that the reasoning of the Supreme Court of Wisconsin represents the later and, in our opinion, better view of the law, especially since the act is remedial in character and is to be construed liberally. *Ocean Acc. & G. Corp.* v. *Industrial Com.*, 32 Ariz. 265, 257 Pac. 641; *Netherton* v. *Lightning Del. Co.*, 32 Ariz. 350, 258 Pac. 306; *Federal Mut. Liab. Ins. Co.* v. *Industrial Com.*, 32 Ariz. 293, 257 Pac. 982. We hold, therefore, that the repairs which Colby was making at the time of his injury were "in the usual course of the trade, occupation or business of the employer."

This disposes of the only issues raised in the petition. The award is affirmed.

McALISTER, C. J., and ROSS, J., concur.