[Civil No. 3055.  Filed June 8, 1931.]

[299 Pac. 1031.]

A. C. GRABE, Petitioner, v. THE INDUSTRIAL COMMISSION OF ARIZONA, Respondent.

Mr. O. T. Richey, for Petitioner.

Mr. Terrence A. Carson, for Respondent.

LOCKWOOD, J.—On November 3, 1930, the Industrial Commission of Arizona made an award in favor of Andres Castro, against one A. C. Grabe of Tucson, Arizona, in the sum of $1,405.79, for injuries received by Castro while he was engaged in operating a machine used in the making of brick, and Grabe has brought the award before us for review in accordance with the provisions of section 1452, Revised Code of 1928. With the exception of one point, which we shall consider more at length later in the opinion, there is no conflict whatever as to the actual facts in the case. The dispute is rather over the conclusions of law to be drawn from such facts, and we therefore state them as follows:

Castro was injured on June 23, 1930. On the first day of July a report of the injury was filed with the Industrial Commission on the forms provided by it. This report stated the employer's name as "Grabe Brick Co.," and was signed "A. C. Grabe, Prop." On July 16th a formal claim for compensation, also on the commission's usual form, was made by Castro. On August 7, 1930, the commission addressed a letter to "Grabe Brick Co., Tucson, Arizona," stating that according to its records the employer was not covered by compensation insurance as the policy previously held by it had expired, and notifying it of its liability under the statute. On August 29th the commission made an award in favor of Castro in the sum of $2,109.36, and on September 4th a letter, inclosing a copy of the findings and award, was mailed to Grabe Brick Company at Tucson. On September 8th Messrs. Richey & Richey, attorneys of Tucson, notified the commission that "Grabe Brick Co." was merely the trade name of a business owned by Wm. A. Grabe, and that the latter had never been served with any

notice of process in the proceedings, and 'that they desired to enter an appearance on behalf of the company and Mr. Grabe, and would later file an answer denying all liability for the accident. Thereupon and on September 10th a formal notice of hearing to be held on the claim September 13th was served upon Richey & Richey, the Grabe Brick Company, Castro, and his attorney, and the Home Accident Insurance Company, which last had previously carried industrial insurance for the Grabe Brick Company. At the time and place of the hearing Wm. A. Grabe was not present, but A. C. Grabe appeared, together with Oscar T. Richey, and Mr. Richey made the following statement:

"We are appearing for Wm. A. Grabe, an individual, and A. C. Grabe, another individual. Wm. A. Grabe is the father of A. C. Grabe. Wm. A. Grabe owns the land and all of the equipment commonly designated as the property of the Grabe Brick Company. The Grabe Brick Company is merely a chosen name by which the business is known and called. It is neither a co-partnership nor a corporation. We will expect to show in order to clear the record of the Industrial Commission in this matter, and also any cloud that might rest on either Wm. A. Grabe or A. C. Grabe in the matter of this claim of Andres Castro some time heretofore filed with the Industrial Commission and upon which claim an award was made on the 29th day of August, 1930. We expect to show in this matter that Wm. A. Grabe rents the land and all the equipment commonly known as the Grabe Brick Company to his son, A. C. Grabe, who pays as compensation and for the use thereof, a stipulated, agreed sum between himself and his father, of so much per thousand brick that he makes, for the use of the land and the equipment; that Wm. A. Grabe has no connection whatever with the employment of Andres Castro, is in no way liable for any compensation to him, does not direct his labors nor has he any control whatever over Andres Castro in anywise. We expect also to show that A. C. Grabe

has entered into an independent contract with one Jose Romo whereby, under that contract, Jose Romo manufactures brick for A. C. Grabe and A. C. Grabe pays Romo so much per thousand for the manufacture of those brick; that A. C. Grabe does not employ any men or any laborers of any kind and did not employ Andres Castro at any time and had no control over Castro or his conduct, or his services at any time, or his labor, and that Andres Castro was employed by Jose Romo as an independent contractor and that, therefore, Wm. A. Grabe, nor A. C. Grabe are liable for any injury that might have been caused Castro.''

A. C. Grabe then was sworn as a witness, and was examined and cross-examined in regard to the matter. No further oral testimony was taken, apparently, but there was in evidence before the commission the report first made and signed by A. C. Grabe as above referred to, various reports from the attending physician, and certain insurance policies and reports thereon. These policies for the period of two or three years before the accident all showed the insured as ''Grabe Brick Company, A. C. Grabe,'' or ''Grabe Brick Company, A. C. Grabe, Prop.,'' and the pay-roll audit on one policy was signed by A. C. Grabe.

There is no dispute as to the extent of the injury nor the amount of the award. The first contention of petitioner is that the commission has no authority to make an award against A. C. Grabe personally for the reason that he had never been served with any notice of the hearing, or any pleading or claim upon which the award was made, nor was he granted an opportunity to make defense to the proceedings.

It appears conclusively from the record that A. C. Grabe personally reported the accident; that at the hearing held September 13th he was both present and represented by his attorney; that at that time through his attorney he set up a defense as against

any award being made against him, and testified in regard to the matter. To hold that under such circumstances he did not have notice of the time and place of the hearing, and that the commission therefore had no jurisdiction to enter an award against him, would be hypertechnical in the extreme. Section 1403, Revised Code of 1928, reads as follows: ''Order not void for technical omission. A substantial compliance with the requirements of this article shall be sufficient to give effect to the orders of the commission, and they shall not be declared inoperative, illegal, or void for an omission of a technical nature.'' We are of the opinion that petitioner by participating in the proceedings with full knowledge of the nature thereof waived any formal notice of the hearing, if, indeed, the same was required, and that the commission had jurisdiction as against him to determine the issues before it. *Merchants Heat & Light Co.* v. *J. B. Clow & Sons,* 204 U. S. 286, 51 L. Ed. 488, 27 Sup. Ct. Rep. 285.

The second question, and the vital one, is whether or not Castro at the time of his employment was or was not an employee of Grabe within the provisions of section 1418, Revised Code of 1928, which, so far as applicable to this case, reads as follows:

''Where an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such contractor and the persons employed by him, and his sub-contractor and the persons employed by the sub-contractor, are, within the meaning of this section, employees of the original employer. A person engaged in work for another, and who while so engaged, is independent of the employer in the execution of the work, not subject to the rule or control of the person for whom the work is done, but engaged only in the performance of a definite job or piece of work, and subordinate to the employer only in effect-

ing a result in accordance with the employer's design, is an independent contractor and an employer within the meaning hereof.''

Grabe himself testified in direct examination in substance that he contracted with one Jose Romo to manufacture brick, using the machinery and yard leased by Grabe from his father, Wm. A. Grabe; that he paid Romo $2.25 per thousand for the brick he made; that Romo was the boss of the yard, and employed all the men he wanted to help him, Castro being among those so employed, paying them himself out of his receipts from Grabe of the $2.25 per thousand, and that he, Grabe, had no supervision or control over the persons employed by Romo, nor did he pay them himself. This testimony, standing alone, would justify, and indeed, in the absence of any other evidence, would require, a finding that Castro was an employee of Romo, and not of Grabe, and that therefore Grabe was not liable for the injury in question. Grabe, however, testified further as follows:

"Q. Did you direct any employee of Romo or Loya in their work? A. No, sir, only if I caught them wearing gloves, or anything, I would go to Jose and tell him to get them off. . . .

"Q. You spoke about a man using gloves? A. Yes sir.

"Q. And you saw to it that he stopped? A. I went to Jose and told him he couldn't use gloves on the machinery, that it was too dangerous.

"Q. And suppose Jose would have said you had nothing to do with it at all? A. It would have just been too bad for Jose.

"Q. In other words, you exercise personal supervision over every man out there as far as their conduct on the premises is concerned? A. If I caught them doing anything that was not right, I would, yes. . . .

"Q. In other words, if Mr. Romo or Mr. Loya had not carried out operations as you thought they should be, you could discharge them arbitrarily? A. Yes, I

could fire them if they kept it up or if they got dirty about it.

"Q. Sure. They had no security then, as far as their contract was concerned? A. Well, we had no written contract."

It also appeared from the record that Grabe reported the injury on the blank which the commission required employers to use; that his industrial insurance policies prior to the date of the injury for some time back covered brick manufacturing as well as other business; that according to his testimony, Romo had operated the yard for three years previous to the accident, during most of which time the policies above referred to were in force, in the same manner as it was operated at the time of the accident; and that the first claim of nonliability was made after Grabe was informed by the commission that his insurance policy had expired before the accident. Under section 1418, *supra*, if A procures B to do certain work for him which is a part or process in A's trade or business, and retains supervision or control over the work, then B and all B's employees and subcontractors to the Nth degree are, for the purposes of the Compensation Act, employees of A, no matter what the terms or method of employment or compensation. It is obvious that were this not so the beneficent purposes of the act could and would be easily defeated or evaded by unscrupulous employers through the aid of various dummy intermediaries. The statute therefore brushes aside all forms and subterfuges and provides that one just, simple and definite test. If the work be part of the regular business of the alleged employer, does he retain supervision or control thereof? All other matters are of importance only as they throw light on this question.

The evidentiary facts will differ with each case, but the ultimate test remains the same. Let us then ex-

amine the facts in the case at bar with this rule to guide us. The commission found the following facts:

"1. That the above-named applicant, while employed in the State of Arizona by the above-named defendant employer, sustained an injury by accident arising out of and in the course of his said employment on June 23rd, 1930, which injury caused temporary disability entitling said applicant to compensation therefor in the total sum of $76.16.

"2. Said injury caused also a permanent partial disability entitling said applicant to compensation therefor in the sum of $28.60 monthly for a period of 50 months."

The findings of the commission are entitled to the same weight as those of a jury. *Blankenship* v. *Industrial Com.*, 34 Ariz. 2, 267 Pac. 203; *Federal Mut. L. Ins. Co.* v. *Industrial Com.*, 31 Ariz. 224, 252 Pac. 512.

And when the evidentiary facts are such that reasonable men might draw either one of two inferences as to the ultimate facts the judgment of the commission is conclusive on us. *Johnson* v. *Industrial Commission,* 35 Ariz. 19, 274 Pac. 161; *Moeur* v. *Farm Builders Corp.*, 35 Ariz. 130, 274 Pac. 1043.

We are of the opinion that a reasonable man could properly have inferred from the foregoing evidence that Grabe did exercise over Romo and Castro such "supervision and control" as made him the employer responsible for Castro's injury under section 1418, *supra.* Such being the case, the award is affirmed.

McALISTER, C. J., and ROSS, J., concur.