502 P.2d 1080

**EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN and Evans Steel & Manufacturing Company, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Charles Clark, Respondent Employee.**

**No. I CA–IC 687.**

Court of Appeals of Arizona,
Division 1,
Department B.

Nov. 9, 1972.

Rehearing Denied Dec. 19, 1972.

Review Denied Jan. 9, 1973.

**404**

Shimmel, Hill & Bishop, P. C., by Merton E. Marks, Phoenix, for petitioners.

William C. Wahl, Jr., Chief Counsel, Industrial Comm. of Ariz., Phoenix, for respondent.

Lindauer & Goldberg, P. A., by Mark H. Goldberg, Phoenix, for respondent employee.

JACOBSON, Judge.

In this appeal by writ of certiorari the controlling question is whether there was sufficient evidence to support the Industrial Commission's award that the workman was an employee of petitioner Evans Steel & Manufacturing Co. (Evans) rather than an employee of an independent contractor.

Evans is engaged in the business of steel fabricating. Normally, the basic materials upon which the fabrication is to be performed is supplied to Evans by a steel distributing warehouse which delivers the steel to Evans' place of business located in Mesa, Arizona. However, in January 1970, Evans purchased approximately 700 tons of steel from a manufacturer in Japan. This steel was shipped F.O.B. Los Angeles, California, and it became Evans' responsibility to transport this steel from Los Angeles to Mesa, Arizona.

Evans had previously been contacted by a Mr. Glen Reidhead, who had indicated that when the steel arrived in Los Angeles, he would be available to haul the steel from Los Angeles to Mesa. Although Reidhead did not testify at the hearing, it appears that the agreement between Evans and Reidhead was that "[i]n substance, that it [the steel] is there; get it over here; I need it for fabrication." In addition, Reidhead was to be paid at the rate of seventeen cents a mile plus $45.00 a day for the truck used to haul the steel and an additional ten cents a mile for a driver. It was also apparent that the parties initially contemplated that more than one truck was

to be used and that more than one trip would be necessary to complete the transfer of the 700 tons of steel from Los Angeles to Mesa.

The record is unclear as to whether it was initially contemplated that Reidhead was to supply his own trucks for this haul or whether he had to lease additional trucks for this purpose. In any event, either because of the lack of or unavailability of trucks, Reidhead contacted Jim Murphy, owner of Desert Leasing, Inc., and arranged to lease at least three trucks from this firm. However, because of Reidhead's shaky financial condition, Desert Leasing refused to lease the trucks to him directly. Thus, at a meeting with Murphy, Reidhead, and a representative of Evans, Evans agreed to lease three trucks. Although the lease itself was not introduced into evidence, Murphy testified, without objection, that the terms of the lease provided that the lessee (Evans) was to provide the drivers. The cost of the leasing was the same as agreed to by Reidhead and Evans, 17¢ a mile plus $45.00 a day per truck.

Again the record is unclear as to whether Reidhead or Murphy initially contacted the injured workman, respondent Charles Clark. This was accomplished, however, by calling a local truck stop cafe where drivers frequently left their names if available for truck driving jobs, and receiving Clark's name. Clark testified that on January 20, 1970, he received a telephone call from a person named Jim who advised him that he was with Evans Steel and that he would pay a truckdriver ten cents a mile for hauling steel from Los Angeles to Mesa. Clark accepted the employment and the next day, pursuant to instructions, met Reidhead at the leasing company yard and drove one of the leased trucks to the Los Angeles harbor. While engaged in assisting the loading of the steel, a boom broke, causing injuries to Clark. Reidhead obtained a replacement for Clark.

Clark filed his claim for compensation benefits on February 2, 1970, stating that he was injured while employed by Evans. Petitioner accepted the Clark claims and began to pay him temporary compensation benefits. On February 24, 1970, Evans filed its employer's report stating that Clark was in its employ and on its payroll at the time of injury. Clark was paid by a payroll check from Evans in the gross amount of $40.00 (400 miles at 10¢ a mile) from which Evans made appropriate payroll deductions. It is undisputed that prior to the injury the general manager of Evans who hires and fires employees had never seen or talked to Clark.

This appeal is controlled by the application of A.R.S. § 23–902, subsecs. B & C (1967) which provide:

"B. When an employer procures work to be done for him by a contractor *over whose work he retains supervision or control,* and such work is a part or process in the trade or business of the employer, then such contractors and the persons employed by him, and his sub-contractor and persons employed by the sub-contractor, are, within the meaning of this section, employees of the original employer.

"C. A person engaged in work for another, and who while so engaged is independent of the employer in the execution of the work and *not subject to the rule or control of the person for whom the work is done,* but is engaged only in the performance of a definite job or piece of work, and is subordinate to the employer only in effecting a result in accordance with the employer's design, is an independent contractor, and an employer within the meaning of this section." (Emphasis added.)

As the italicized portion of the statute indicates it is the right to control the method of reaching the desired result which determines whether an individual is an "employee" or an "independent contractor". *See* Grabe v. Industrial Commission, 38 Ariz. 322, 299 P. 1031 (1931); Fox West Coast Theatres, Inc. v. Industrial Commission, 39 Ariz. 442, 7 P.2d 582

(1932); Alexander v. Alexander, 51 Ariz. 269, 76 P.2d 223 (1938); Posey v. Industrial Commission, 87 Ariz. 245, 350 P.2d 659 (1960).

Both parties agree that this general principle is applicable. However, like most broad principles of law the ease is in the stating and not in the application. As was stated in Blasdell v. Industrial Commission, 65 Ariz. 373, 376, 181 P.2d 620, 622 (1947), "no hard and fast rule can be set forth, but instead each case must be determined by the sum total of its own facts . . . ." Here petitioners argue that the record before the hearing officer is entirely devoid of any evidence that Evans could or did exercise any right of control over either Reidhead, Murphy or Clark. This is not completely correct.

In analyzing the facts in this case, our attention must be focused on the control or lack thereof exercised by Evans over Reidhead for:

"if A procures B to do certain work for him which is a part or process in A's trade or business, and retains supervision or control over the work, then B and all B's employees and subcontractors to the Nth degree are, for the purposes of the Compensation Act, employees of A. . . . . ." Grabe v. Industrial Commission, supra, 38 Ariz. at 328, 299 P. at 1034.

Admittedly, Evans never directed Reidhead as to what route Reidhead was to take between Mesa and Los Angeles, neither did Evans advise him as to how many trips were necessary nor when he was to leave and arrive. From this petitioners argue that there is a complete lack of control shown. The question is not, however, whether Evans actually controlled these factors, but whether Evans had the right to so control them. Industrial Commission v. Meddock, 65 Ariz. 324, 180 P.2d 580 (1947).

In our opinion, the most important factor in determining this issue is the existence of the lease agreement between Evans and Desert Leasing which provided that Evans was to pay Desert Leasing for trucks based upon a certain amount per mile that these trucks travelled. (The same stipulation was contained in the initial agreement between Evans and Reidhead.) The lease further provided that Evans was to supply the drivers. The Commission could have inferred from this evidence that Evans had the right to control the route that Reidhead took between Mesa and Los Angeles in order to insure that the most direct route was utilized so as to avoid excessive costs. In this regard the evidence before the Commission was such that the Commission could have reasonably inferred that if a mileage check of the trucks revealed a side trip to Las Vegas, Nevada, was made that Evans could have immediately exercised his right of control and ordered Reidhead to take the most direct route between the two cities involved.[1] An equally reasonable inference could be drawn from this evidence compatible with an independent contractor relationship with Reidhead based upon a financial accommodation by Evans for Reidhead.

This is, admittedly, a close case. However, it has long been the rule in reviewing an award of the Industrial Commission, where the evidentiary facts are such that reasonable men might draw either one of two inferences as to the ultimate facts, the judgment of the Commission is conclusive. Grabe v. Industrial Commission, supra.

When we couple the reasonable inference that the right of control existed with the fact that Evans admitted the employment relationship with Clark and paid him by a payroll check, deducting therefrom appropriate withholds, we are drawn

1. If Evans' agreement with Reidhead or Murphy called for a flat charge per load, this inference, of course, could not have been reasonably drawn.

to the conclusion that sufficient evidence existed that Clark was an employee of Evans within the meaning of the Workmen's Compensation Act.

 Evans further argues that even if Clark can be considered an employee of Evans, he does not fall within the statutory definition of a compensable employee, Clark, being "a person whose employment is casual and not in the usual course of trade, business or occupation of the employer." A.R.S. § 23–901, subsec. 4, par. b (1972). In order for this exclusion to apply, the statute by its own terms requires that the purported employee must be both casual and not engaged in the usual course of business of his employer. Modern Trailer Sales of Arizona, Inc. v. Industrial Commission, 17 Ariz.App. 482, 498 P.2d 556 (1972). We need not determine, for the purposes of this appeal whether Clark's employment was in fact "casual", we being of the opinion that the hauling of the steel was in furtherance of Evans' usual course of business. Evans is in the business of steel fabricating. In order to carry on that business, Evans must have steel to fabricate. The steel being hauled from Los Angeles was to be used in that business. The fact that Evans normally receives its steel at its plant in Mesa from other sources, does not change the fact that steel, and the manipulations Evans performs on it, is in its usual course of business. We do not believe it could be seriously argued that if the steel in question had been delivered to its plant in Mesa and that Evans utilized one of its trucks to move it from one point of the yard to its plant for fabrication, that such removal would not be "in the usual course of business" of Evans. The only difference in this case is the distance the steel was transported. The result is the same—furtherance of its steel fabrication business.

For the foregoing reasons, the award of The Industrial Commission is affirmed.

HAIRE, C. J., Division 1, and EUBANK, J., concur.