650 P.2d 502

**FLAMINGO MOTOR INN, Petitioner Employer,**

**State Compensation Fund, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Patrick A. Tighe, Respondent Employee.**

**No. 1 CA–IC 2580.**

Court of Appeals of Arizona,
Division 1,
Department C.

Aug. 17, 1982.

Robert K. Park, Chief Counsel State Compensation Fund, Phoenix by George B. Morse, Tucson, for petitioners employer & carrier.

James A. Overholt, Acting Chief Counsel The Industrial Com'n of Ariz., Phoenix, for respondent.

Davis & Eppstein, P.C., Tucson by Philip Hall, Tucson, for respondent employee.

## OPINION

CONTRERAS, Judge.

The sole issue is whether evidence supports the administrative law judge's finding that respondent Tighe was an "employee" within the meaning of our Workmen's Compensation statutes, of petitioner Flamingo Motor Inn (Flamingo) at the time he was injured. We find that it does, and affirm the award.

## BACKGROUND

During 1979 and 1980, respondent Tighe had been hired to work on a part-time, as-needed basis at the motel and restaurant operated by petitioner Flamingo.[1] He had performed maintenance work, such as cleaning, painting, moving furniture, moving equipment, and scrubbing kitchen walls. On April 17, 1980, respondent Tighe, although he had not been assigned to work that day, went to the premises of petitioner Flamingo to pick up his wife, who was then working full time at the motel.

While respondent Tighe was sitting in the bar waiting for his wife, he and several others were asked by Jim Wooley, the maintenance man at the motel, to help move a large, heavy Chinese wok stove into the restaurant kitchen. Petitioner Flamingo was at that time in the process of converting the existing restaurant into a Chinese restaurant. The owner of Flamingo had placed Mr. Wooley in charge of converting the restaurant and had authorized him to get additional help when needed. Wooley offered to compensate each helper with several drinks from the bar. While helping to move the stove, respondent Tighe injured his back.

On April 24, 1980, respondent Tighe filed an industrial accident claim, which was de-

nied by petitioner carrier. Respondent Tighe filed a request for hearing. Following the hearing, the administrative law judge issued, and later affirmed on review, a Decision upon Hearing and Findings and Award for Compensable Claim. The decision included the following findings, which petitioners challenge in this special action— Industrial Commission:

9. In the instant case the applicant was requested to perform services of a very limited nature, i.e., assist in moving a stove and in exchange he would receive a round of drinks for his labor. In the instant case the nature of the employment as well as the duration thereof is of little consequence in arriving at a determination that the applicant had been hired and was an employee of the defendant employer herein.

10. The evidence establishes that the applicant sustained a personal injury by accident arising out of and occurring in the course and the scope of his employment with the defendant employer herein on April 17, 1980.

11. The applicant is entitled to medical, surgical, hospital and/or compensation benefits as provided for by law from April 17, 1980 until such time as his condition is determined to be medically stationary.

## EMPLOYEE

▇ We start with the principles that (1) the Workmen's Compensation Act as a whole is remedial in character and is to be construed liberally, *S.H. Kress & Co. v. Industrial Commission,* 38 Ariz. 330, 299 P. 1034 (1931), and (2) that the definition of "employee" is to be given liberal interpretation in order to properly effectuate the purposes of the Workmen's Compensation Act. *DeVall v. Industrial Commission,* 118 Ariz. 591, 578 P.2d 1020 (App. 1978). A.R.S. § 23–901(4)(b)[2] defines an "employee":

1. Mr. Tsang-Chi-Chen was the owner of the motel and the restaurant. Although the restaurant portion of the operation had been previously leased to and operated by a third party, it

is clear from the record that on April 17, 1980, Mr. Chen was operating the restaurant.

2. The pertinent statutory reference at the time of the alleged injury and the administrative law

§ 23–901.   Definitions

4.   "Employee", "workmen" and "operative" means:

(b) Every person in the service of any employer subject to the provisions of this chapter, including aliens and minors legally or illegally permitted to work for hire, but not including a person whose employment is casual and not in the usual course of trade, business or occupation of the employer.[3]

Because of the conjunctive wording of the exclusion, both requirements must be met before a person will be excluded from the term "employee". *Kress, supra; Modern Trailer Sales of Ariz. v. Industrial Commission,* 17 Ariz.App. 482, 498 P.2d 556 (1972). Thus, even if his employment was "casual", respondent would be an "employee" covered by workmen's compensation if his employment was "in the usual course of trade, business or occupation of the employer."

## USUAL COURSE OF BUSINESS

The issue presented is essentially whether a person, while engaged in installing equipment, as part of the remodeling of business premises, is engaged "in the usual course of trade, business or occupation of the employer" so as to be an "employee" covered by workmen's compensation. That precise issue has not been addressed previously, but other similar activities have been held to be within the usual course of an employer's business.

Construction of a building in which to carry on the business is in the usual course of business. *Greenway Baptist Church v. Industrial Commission,* 130 Ariz. 482, 636 P.2d 1264 (App. 1981), and cases cited therein.[4] Repair of a building in which business is carried on is in the usual course of business. *Kress, supra.* Repair of equipment used in the business is in the usual course of business. *Carnes v. Industrial Commission,* 73 Ariz. 264, 240 P.2d 536 (1952). Transporting materials to the place of business is in the usual course of business. *Employers Mut. Liability Ins. Co. of Wis. v. Industrial Commission,* 18 Ariz.App. 403, 502 P.2d 1080 (1972). Servicing inventory at the place of business is in the usual course of business. *Modern Trailer Sales, supra.*[5]

In other jurisdictions, the great majority of decisions have held that remodeling and incidental construction are within the usual course of business. 1C A. Larson, Workmen's Compensation Law, § 51.23 (1980).[6]

## CONCLUSION

In accord with the principle of liberal construction and the authorities cited above, we hold that the moving and installation of kitchen equipment which will be used in the employer's restaurant business is employment "in the usual course of trade, business or occupation of the employer" and that the administrative law judge properly

judge's decision was A.R.S. § 23–901(4)(b). Subsequently the statute was amended, and the identical provision is now set forth in A.R.S. § 23–901(5)(b).

3.   Petitioners do not contend that respondent Tighe was an independent contractor, i.e., that petitioner Flamingo did not have the right to control the method by which he did his work. *Cf. Kress, supra, Greenway, infra.*

4.   The issue in *Greenway* was not the precise issue posed here, but instead whether the activity was "in the usual trade, business, profession or occupation of an employer" so as to make the employer subject to the workmen's compensation act. A.R.S. § 23–902(A). We do not believe that distinction is significant.

5.   The issue in *Modern Trailer Sales* was not the precise issue posed here, but instead whether the employer had enough "employees" so as to

make it subject to the workmen's compensation act. A.R.S. § 23–902(A). We do not believe that distinction is significant.

It is our opinion that where there is a scheme or plan or periodic need for extra short-term employees in the usual course of the business of the employer, then such extra short-term employees are to be counted in determining the presence of three or more employees regularly employed thus necessitating the securing of workmen's compensation insurance. 17 Ariz.App. at 486, 498 P.2d at 560.

6.   Representative of such activities are the construction of additional booths in a restaurant, *J.P.O. Sandwich Shop, Inc. v. Papadopoulos,* 105 Ind.App. 165, 13 N.E.2d 869 (1938), and the remodeling of a dilapidated building for use as a beer parlor, *Colosimo v. Giacomo,* 199 Minn. 600, 273 N.W. 632 (1937).

found that respondent Tighe was an "employee" of petitioner covered by workmen's compensation.

The award is affirmed.

EUBANK, J., concurs.

HAIRE, Judge, dissenting:

On this review the petitioning carrier and employer do not question the administrative law judge's determination that an employment relationship existed between the Flamingo Motor Inn and the claimant for the five to twenty minute period during which claimant injured his back. The only issue is whether the employment relationship which existed at that time was such as to bring claimant within the exception to workmen's compensation coverage resulting from the statutory definition of "employee" set forth in A.R.S. § 23–901(4)(b).[7] Under that statutory provision there is excluded from the definition of "employee" for workmen's compensation coverage purposes a person whose employment is both "casual" and "not in the usual course of trade, business or occupation of the employer."

Here, the employer was engaged in running a motel and a restaurant in conjunction with that business. The restaurant had previously been leased out, and upon resuming its operation the employer decided to change it over to a Chinese style food operation. Mr. Wooley, the employer's regular maintenance man, was of the opinion that he could handle the necessary kitchen remodeling, and therefore was given that job, which was not part of his regular maintenance duties.[8]

The facts pertinent to the particular employment involved here occurred when the claimant went to the employer's premises to pick up his wife who worked for Flamingo as the head of housekeeping. He waited for his wife in the motel's bar, consuming some drinks during his wait. It was during this period while claimant was sitting at the bar that Mr. Wooley came in and stated to everyone present that he needed assistance in moving a "wok" stove and that he would buy anyone helping him a couple of rounds of drinks. As found by the administrative law judge, this offer "resulted in approximately five patrons, including the [claimant] and the bartender in offering their assistance." During the ensuing five to twenty minute period, while helping to move the "wok" stove into the kitchen, claimant apparently injured his back. It is this five to twenty minute period of employment that is involved in this appeal.

In his award finding the claim compensable, the administrative law judge fully discussed the issues of whether claimant's late filing of his request for hearing should be excused and whether a contract for hire or an employment relationship existed between claimant and the Flamingo Motor Inn at the time of the injury. The administrative law judge's findings on these issues are not questioned on appeal. However, in his award he neither refers to nor discusses the terms of A.R.S. § 23–901(4)(b) relating to the exclusion of coverage where the employment is both casual and not in the usual course of the trade, business or occupation of the employer.[9] Furthermore, he made no factual findings or conclusions of law on these issues.

In paragraph 9 of the award the administrative law judge did make the following statement:

"9. In the instant case the applicant was requested to perform services of a very limited nature, i.e., assist in moving

7. The pertinent statutory reference at the time of the alleged injury and the administrative law judge's decision was A.R.S. § 23–901(4)(b). Subsequently the statute was amended, and the identical provision is now set forth in A.R.S. § 23–901(5)(b).

8. A new employee was hired to handle Mr. Wooley's maintenance duties during the period he was putting in the Chinese kitchen.

9. The administrative law judge does cite A.R.S. § 23–901(4) in paragraph 7 of his award. However, from the award's immediately following quotation from Larson, it appears that the citation was made in reference to whether an employment relationship existed, and not as to whether, assuming the existence of such a relationship, that employment was excluded from coverage.

a stove and in exchange he would receive a round of drinks for his labor. In the instant case the nature of the employment as well as the duration thereof is of little consequence in arriving at a determination that the applicant had been hired and was an employee of the defendant employer herein."

Although it might be argued that by using the words "had been hired *and was an employee* of the defendant employer" (emphasis added) the administrative law judge was addressing the coverage exclusion issue presented by A.R.S. § 23–901(4)(b)'s definition of employee, it is my opinion that, when read in context, the statement more logically appears to be directed to the administrative law judge's conclusions concerning the existence or non-existence of an employment relationship. If, however, the administrative law judge intended paragraph 9 to be a finding or conclusion that claimant was not an "employee" falling within the coverage exclusion provisions of A.R.S. § 23–901(4)(b), then it must be held that the conclusion constitutes gross legal error. If in paragraph 9 the administrative law judge intended to address A.R.S. § 23–901(4)(b)'s definition of "employee" then his conclusion that "the nature of the employment . . . is of little consequence in arriving at a determination" of whether the claimant was an "employee" is indeed strange. It is difficult to perceive how a determination could be made concerning whether claimant's employment was not in the usual course of the employer's business without giving full consideration and conclusive effect to the "nature of the employment".

From the foregoing it is apparent to me that the administrative law judge *either* 1) failed to appreciate the significance of A.R.S. § 23–901(4)(b), or 2) refused to consider it in arriving at his decision, even though the issue was raised by the carrier at the hearing on this matter prior to the award, as well as in a post-award memorandum accompanying the carrier's request for review. While this failure alone would ordinarily justify setting aside the award, *Van Duzee v. Industrial Commission,* 25 Ariz.App. 395, 543 P.2d 1152 (1975), it does not form the basis for my dissent from the majority's affirmance of the award. Rather, my dissent is based upon my belief that the evidence presented at the hearing requires the conclusion that claimant's employment was both casual and not in the usual course of the employer's business.

Here, the focus must be upon the employment which existed at the time the injury occurred. Claimant was merely one of several patrons of a bar who were offered a couple of drinks if they would help move a heavy "wok" stove a short distance as a part of the employer's remodeling project. His employment was based upon the happenstance that he was there; he was not sought out or hired based upon any past relationship of employment. He and several other patrons accepted the offer of drinks and spent from five to twenty minutes helping move the stove. The nature of claimant's employment in that regard was thus the same as that of the other patrons.

There does not appear to be any real argument that the employment was not casual. As stated by the claimant in his brief:

"The real question before this Court is whether Respondent, in moving the stove into the kitchen of the restaurant, was engaged in an activity in the usual course of trade, business or occupation of the Petitioner Employer, who owned and operated the restaurant in conjunction with the motor inn."

Was the remodeling and reconstruction of the kitchen for use in a Chinese style restaurant operation in the *usual* course of the employer's business? I submit that it was not. This was not the moving of equipment required or occasioned as a part of necessary maintenance, repair or even replacement as might be usual in the course of a motel and/or restaurant business operation. This was a remodeling job, and the testimony is specific that it was not being performed as a part of the employer's regular maintenance operation. The resulting non-coverage is a harsh result, and one which I would not countenance were it not for the

clear language of the statute. However, the legislature has the sole prerogative to specify the persons who are to be considered as covered employees within the meaning of the workmen's compensation statutes. *Watson v. Industrial Commission,* 100 Ariz. 327, 414 P.2d 144 (1966); *Ferrell v. Industrial Commission,* 79 Ariz. 278, 288 P.2d 492 (1955).

The majority cites *Greenway Baptist Church v. Industrial Commission,* 130 Ariz. 482, 636 P.2d 1264 (App.1981), for the principle that the construction of a building in which to carry on the business is in the usual course of business. The case dealt with a claimant injured during the construction of a church sanctuary. In its opinion the court stated that the issue before the Commission was whether the claimant was an independent contractor, and, if not, whether he worked for the petitioning employer or for another entity, Peterson Construction. The administrative law judge held that the claimant was not an independent contractor, but rather was employed by the petitioning employer, Greenway Church. While to me the pertinent facts are distinguishable, I see no necessity for an in-depth analysis of the opinion since for the following reasons it does not constitute valid authority or a holding on the issue in question. First, the *Greenway* court expressly noted that there was no contention that claimant's employment was "casual". This should have dispensed with any necessity to discuss the additional requirements of A.R.S. § 23–901(4)(b), since because of the conjunctive wording of the statute, in order for exclusion from coverage to occur there must be a showing that the employment was both casual *and* not in the usual course of the employer's business. *S. H. Kress & Company v. Industrial Commission,* 38 Ariz. 330, 299 P. 1034 (1931); *Modern Trailer Sales of Arizona, Inc. v. Industrial Commission,* 17 Ariz.App. 482, 498 P.2d 556 (1972). Second, and just as important, the actual holding of the court was that the evidence was insufficient to support a finding *of any employment rela-*

*tionship whatsoever* between the church and the claimant, and the award was set aside on that basis.

The majority also cites *S. H. Kress & Co. v. Industrial Commission, supra,* and *Carnes v. Industrial Commission,* 73 Ariz. 264, 240 P.2d 536 (1952), for the proposition that employment for the maintenance and repair of buildings and equipment used in the business of the employer constitutes employment in the usual course of business. These decisions are sound and would be applicable here if the claimant had been injured while employed for maintenance, repair or even operational purposes, such as the moving of beds, tables or kitchen equipment for cleaning, repair or as necessitated by the operations of the business. Such was not the case.

Likewise, *Employers Mutual Liability Insurance Company of Wisconsin v. Industrial Commission,* 18 Ariz.App. 403, 502 P.2d 1080 (1972), relied upon by the majority is a sound decision, but simply not applicable to the facts presented here. There the claimant was injured while transporting steel for use in the employer's steel fabric heating business, and the court held that the hauling of the steel was a facet of the usual business of the employer. *Modern Trailer Sales of Arizona, Inc. v. Industrial Commission, supra,* also cited by the majority, while it does discuss and apply A.R.S. § 23–901(4)(b) to the facts presented in that case, provides neither factual nor legal support for the majority's analysis.

The section in Professor Larson's treatise on workmen's compensation law cited by the majority,[10] primarily contains references involving injuries incurred by employees doing routine maintenance or repair work similar to the situations involved in the above-cited Arizona decisions, *Kress* and *Carnes, supra.* Decisions of this type furnish no support for the result reached here. The only decisions cited by the majority from other jurisdictions actually involving remodeling situations, *J.P.O. Sandwich Shop, Inc. v. Papadopoulos,* 105 Ind.App. 165, 13 N.E.2d 869 (1938) and *Colosimo v.*

---

**10.** 1C A. Larson, Workmen's Compensation,     § 51.23 (1980).

**206**

*Giacomo,* 199 Minn. 600, 273 N.W. 632 (1937), are not persuasive. Neither case addresses the logical distinctions to be made between activities which are "usual" to the course of an employer's business, such as routine maintenance and repair work, as opposed to activities which are not in the "usual" course of the business, such as, in this case, remodeling. In the *J.P.O. Sandwich* case, the court based its holding finding coverage on the fact that the employer testified that certain booths being installed at the time of injury by the workman "were necessary in his business". This clearly is not the standard set by our workmen's compensation laws. The *Colosimo* decision is likewise characterized by a lack of analysis and legal reasoning. In that decision perhaps the greatest justification set forth by the court for affirmance of the award is the court's conclusionary statement:

"The case was submitted on briefs and the amount involved is not large."

For a case holding that an injury occurring during a remodeling project was casual and not in the usual course of business, and therefore excluded from coverage, see *Feathers v. Duncan,* 582 S.W.2d 385 (Tenn. 1979).

Although the exclusion of coverage required by A.R.S. § 23–901(4)(b) leads to harsh results, the issue should be squarely faced and resolved when raised before an administrative law judge. Likewise, this court must require that statutes be applied as written. If this court does not impose such a requirement, then the resulting inconsistencies in the application of the exclusionary language of A.R.S. § 23–901(4)(b) could well lead to unequal treatment of claimants for workmen's compensation benefits. If the honest and uniform application of the statute leads to harsh results, then perhaps the legislature might see fit to repeal or amend the statute, as has been done in the case of similar statutes by at least two states, California and Michigan. *See* 1C A. Larson, Workmen's Compensation, § 51.23 (1980).

For the reasons set forth above, I would set aside the award.