NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

PATRICK MCDERMOTT, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

BALFOUR BEATTY COMMUNITIES LLC, *Respondent Employer*,

STARR INDEMNITY & LIABILITY CO, *Respondent Insurance Carrier*.

No. 1 CA-IC 22-0017
FILED 9-28-2023

Special Action - Industrial Commission
ICA Claim No. 20210890379
Carrier Claim No. 005094-001373-WC-01
The Honorable Michelle Bodi, Administrative Law Judge

**AWARD SET ASIDE**

COUNSEL

Thomas C. Wilmer PC, Phoenix
By Thomas C. Wilmer
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent ICA*

Jardine Baker Hickman & Houston PLLC, Phoenix
By K. Casey Kurth
*Counsel for Respondent Employer and Insurance Carrier*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge Paul J. McMurdie joined.

---

**C A T T A N I**, Judge:

¶1 Patrick McDermott challenges the Industrial Commission of Arizona ("ICA")'s dismissal of his workers' compensation claim premised on his alleged failure to report his injury "forthwith" as required by A.R.S. § 23-908. We reverse, holding that McDermott satisfied the reporting requirement by advising his employer of a possible work injury a day or two after it happened and filing a formal Worker's Report of Injury just 13 days after that. We also conclude that, although the ICA properly allowed a replacement presiding Administrative Law Judge ("ALJ") to conduct an administrative review after the original presiding ALJ resigned, the replacement ALJ erred by deferring to the factual findings made by the first ALJ rather than reviewing de novo the original proceedings.

**FACTS AND PROCEDURAL HISTORY**

¶2 McDermott began working as a maintenance technician for Balfour Beatty Communities, LLC, on March 15, 2021. Balfour provides maintenance for housing on Luke Air Force Base. On his first day of work, McDermott helped remove and replace a refrigerator and carried heavy boxes of ripped-out flooring planks to a truck for hauling away. McDermott twisted his right knee while carrying the planks. Although he felt minor pain, he continued working without telling co-workers. The next day, McDermott spent the morning completing new-hire paperwork. That afternoon, he was assigned a cargo van for use on the job, and he spent time on his knees cleaning out the back of the van. Upon getting out of the van as his shift ended, he felt pain when his right knee buckled, but he did not mention the injury to anyone as he left work.

¶3 The next day (March 17), McDermott's knee was swollen and painful. He called his supervisor, Albert Williams, and told him he could not go to work because he needed a doctor to examine his knee. Williams

2

asked him if he knew what had caused the knee problem, and McDermott replied that he was unsure if it was "work or personal." When McDermott went to urgent care, he explained that he had hurt his knee at work on March 15 and 16. He was preliminarily diagnosed with a suspected injury to the meniscus, given a knee brace, told not to work, and told to return in three days.

¶4 Also on March 17, Anthony Farrell, the Facility Manager who had hired McDermott, called him to see how he was doing. Farrell had heard from Williams that McDermott hurt his knee and was going to urgent care. Farrell asked McDermott how he had injured his knee, and McDermott replied that he did not know. When Farrell asked him if the injury happened at work, McDermott replied that "he was not 100 percent sure how it happened" but that it may have happened at work. The next day, Farrell completed a Worker Injury Report reflecting that "[McDermott] went to doctor for knee pain on the morning of 3/17/2021. He was unsure if he strained knee at work or elsewhere. No accident was reported by him in the workplace." Farrell's report also stated: "[McDermott] cannot tell manager when and where he was injured, does not state it was work related. **Reporting for notice purposes in the event [McDermott] seeks [workers' compensation], if yes, we would like this investigated.**"

¶5 On March 30, McDermott filed a Worker's Report of Injury with the ICA, stating that the injury happened two weeks earlier while he was working on March 15. The knee injury diagnosis was later confirmed, and in April 2021, McDermott had surgery to repair a torn medial meniscus in the knee.

¶6 The employer's insurance carrier, Starr Indemnity & Liability Co., denied McDermott's claim, and he requested a hearing. Balfour and Starr raised the defense of failure to report the injury promptly per A.R.S. § 23-908(E), which requires an injured employee to report an injury "forthwith" to the employer. McDermott, Williams, and Farrell testified at the hearing.[1] McDermott testified that he told Williams on March 17 about his knee twisting on the first day he worked and buckling on the second day. He also testified that he told Farrell on March 17 that he had injured his knee at work. Both Williams and Farrell testified that McDermott told them he was unsure where the injury occurred. Williams stated that McDermott told him he did not know if the injury was work-related or

---

[1] The surgeon who repaired the knee also testified, but his testimony is not relevant to the issues raised on appeal.

"personal," and Farrell indicated that McDermott said he was unsure where the injury had occurred but that it "may have happened at work."

**¶7** The ALJ issued a decision dismissing the claim for failure to timely report the injury as mandated by A.R.S. § 23-908. After summarizing the testimony of all three witnesses, the ALJ found that Farrell and Williams were credible. The ALJ did not address McDermott's credibility, the significance of the worker injury reports, or the medical reports documenting McDermott's explanation of his injury for medical treatment. Nor did the decision address McDermott's March 30 Worker's Report or make any finding about whether the alleged failure to timely report prejudiced Balfour.

**¶8** McDermott requested administrative review, arguing that the ALJ did not properly weigh the evidence and that any purported failure to report timely should be excused. A different ALJ conducted the review because the ALJ who had presided over the hearing and issued the award had resigned. The new ALJ then concluded that she lacked authority to make "a *de novo* review" of the record and was bound by the credibility findings made by the first ALJ. The award was affirmed on review without further discussion.

**¶9** McDermott filed this special action review. We have jurisdiction under A.R.S. §§ 12-120.21(A)(2) and 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

## DISCUSSION

**I.    "Forthwith" Report of Injury.**

**¶10** Under A.R.S. § 23-908(E), an injured worker seeking workers' compensation must "forthwith" report an accidental injury. The Arizona Supreme Court has observed that this requirement serves two purposes: to allow the employer to provide immediate medical diagnosis and treatment and to facilitate an investigation of the circumstances that caused the injury. *Thompson v. Indus. Comm'n*, 160 Ariz. 263, 266 (1989). No compensation will be paid if an injured worker does not expeditiously report the injury. A.R.S. § 23-908(F).

**¶11** Here, the evidence (even accepting Balfour's and Starr's version of events) establishes that McDermott timely reported his injury. McDermott spoke to Williams and Farrell about his knee pain on March 17, 2021, when McDermott first felt significant pain and just a day or two after his injury. Both Williams and Farrell acknowledged that McDermott told

them he was unsure how he injured his knee but that it may have happened at work. McDermott never offered a non-work cause for the injury, and his reports to Williams and Farrell—at a minimum—put them on notice that the knee injury could have happened at work. Farrell's March 18 Worker Injury Report acknowledged as much: "in the event [McDermott] seeks [workers' compensation], if yes, we would like this investigated."

**¶12** Less than two weeks after that (on March 30, 2021), McDermott filed a Worker's Report of Injury with the ICA, stating that the injury happened at work on March 15, 2021. Given these facts, McDermott satisfied the requirement to expeditiously report his work-related injury. *See Thompson*, 160 Ariz. at 266–67 (noting that an employer was "put on notice of the possibility that [the employee's accident and heart attack] were work related," even though the employee "did not intend to notify his employer forthwith"; a "reasonably conscientious" employer would have known based on the facts presented that the employee's heart attack after collapsing at work "could involve a potential compensation claim").

**¶13** Furthermore, even if McDermott had not timely reported the injury, there was no evidence that the relatively short delay in reporting prejudiced Balfour (and Starr) and thus was not a valid basis for denying the claim. *See Douglas Auto & Equip. v. Indus. Comm'n*, 202 Ariz. 345, 347 (2002) (noting that a failure to report forthwith may be excused if the delay did not prejudice the employer or if the worker had no way of knowing that an injury occurred or related to employment); *see also S.H. Kress & Co. v. Indus. Comm'n*, 38 Ariz. 330, 337 (1931) (noting that workers' compensation law is remedial in character and to be construed liberally). Given the facts described above putting the employer on notice of a possibly work-related injury and the lack of any alleged prejudice resulting from the "delay" in reporting the injury, the ALJ erred by denying McDermott's claim as untimely.

## II.    Substitute ALJ and Scope of Administrative Review.

**¶14** McDermott argues that the ICA violated its statutes by authorizing administrative review by someone other than the ALJ who presided over the hearing. Although our ruling above renders this argument moot, we address it to guide the proceedings on remand.

**¶15** Under A.R.S. §§ 23-108.02(A) and -941(C), the Commission itself does not hear ICA claim disputes, but rather refers cases to an ALJ Division for adjudication and decision. The Chief ALJ then assigns an ALJ to preside over the case. A.A.C. R20-5-138. Once an award is issued, the

parties may seek administrative review, and under A.R.S. § 23-943, that administrative review is to be conducted as follows:

> E. The review shall be made by the presiding administrative law judge and shall be based on the record and the memoranda submitted under the provisions of subsection A of this section.

> F. The presiding administrative law judge may affirm, reverse, rescind, modify or supplement the award and make such disposition of the case as is determined to be appropriate. A decision on review shall be made within sixty days after the review has been requested, with preference being given to those cases not receiving compensation.

**¶16** This court has interpreted the term "presiding" in § 23-943 to mean the ALJ presiding over the hearing, not the division's Chief ALJ. *Koval v. Indus. Comm'n*, 23 Ariz. App. 277, 279 (App. 1975). Relying on *Koval*, McDermott asserts that only the ALJ who presided over the original hearing can conduct the administrative review. But *Koval*—which interpreted a statutory change from administrative review by the Commission itself to review by a "presiding" hearing officer—only distinguished the role of a *presiding*, or assigned, hearing officer from that of the *chief* of the division, who the claimant wished to have conduct administrative review. *Id.* *Koval* does not address, and does not control, whether a substitute ALJ may conduct administrative review if the original "presiding" ALJ is no longer available.

**¶17** Before an award is issued, A.R.S. § 23-942(B) permits a substitute ALJ to render the award if the (previously) presiding ALJ dies, resigns, retires, leaves employment, or becomes incapacitated. Although the statute does not address substitution during the administrative review stage after an initial award, ICA policy has similarly permitted a substitute ALJ to conduct administrative review if the ALJ who conducted the hearing is unavailable. We agree that nothing prevents such a substitution at the administrative review level. If a presiding ALJ dies or becomes incapacitated, or if an ALJ retires and is no longer available to return to conduct an administrative review, a substitute ALJ may be appointed and essentially becomes the new presiding ALJ.

**¶18** We note, however, that § 23-943(E) provides for a review "based on the record," and the statute does not require or otherwise contemplate any deference to the original factfinder. Thus, a substituted

ALJ can only conduct an administrative review based on a complete record review and without deference to the original presiding ALJ. *Cf. Coca-Cola Bottling Co. of Tucson v. Indus. Comm'n*, 23 Ariz. App. 496, 497 (App. 1975) (noting that § 23-943(F) contemplates "broad powers" for administrative review).

**¶19** Here, relying on *W.A. Krueger Co. v. Industrial Commission*, 150 Ariz. 66 (1986), the substituted ALJ on review concluded that she had to defer to factual findings by the original presiding judge. That was error. The court in *Krueger* addressed a wholly different issue, an issue of *law* regarding whether the American Medical Association Guides were binding or merely guidelines in determining impairment ratings. *Id.* at 67–68. The parties there did not raise, and the Arizona Supreme Court did not address, whether § 23-943(F) permits administrative review by a new ALJ or whether the new ALJ had to defer to factual findings by the original presiding ALJ.

**¶20** Because the statute authorizes the presiding ALJ on review to reverse, rescind, modify, or supplement the award "as is determined to be appropriate," A.R.S. § 23-943(F), we conclude that the required review is a de novo determination of whether the initial award was appropriate. Just as it would be error for an ALJ who substituted in after the start of a hearing but before the issuance of an award to render a decision without having considered all the evidence, it is error for a substitute presiding ALJ on administrative review to conduct such a review without considering all the evidence. In both instances, the substituted ALJ owes no deference to the original ALJ and can only complete the mandated proceedings or review based on an independent assessment of the entire record.

## CONCLUSION

**¶21** McDermott gave sufficient notice of his injury to Balfour. Accordingly, we set aside the award and remand for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:          JT