[Civil No. 3385.  Filed November 22, 1933.]

[26 Pac. (2d) 1012.]

UNITED STATES FIDELITY AND GUARANTY COMPANY, a Corporation, Petitioner, v. THE INDUSTRIAL COMMISSION OF ARIZONA, J. NEY MILES, HOWARD KEENER and L. C. HOLMES, as Members of Said Industrial Commission of Arizona, OCEAN ACCIDENT AND GUARANTEE CORPORATION, LTD., and FLORA FRANCES HAWES, SHELDON HAWES, KATHLEEN HAWES and DORIS LEE HAWES, Surviving Widow and Minor Children of RALPH W. HAWES, Deceased, Respondents.

Messrs. Moore & Shimmel, for Petitioner.

Mr. Don C. Babbitt and Mr. D. L. Cunningham, for Respondent Industrial Commission.

Mr. C. H. Young and Mr. H. S. McCluskey, for Respondent Ocean Accident and Guarantee Corporation, Limited.

Messrs. Rice & Mathews, for Hawes' Dependents.

LOCKWOOD, J.—This matter comes before us on a writ of *certiorari* sued out by United States Fidelity and Guaranty Company, a corporation, hereinafter called petitioner, against Industrial Commission of Arizona, the Ocean Accident and Guarantee Corporation, Limited, a corporation, hereinafter called the company, and Flora Frances Hawes, Sheldon Hawes, Kathleen Hawes and Doris Lee Hawes, hereinafter called the claimants, to review an award made by the Industrial Commission in favor of the claimants and against the petitioner and the company jointly.

The material facts of the case are nowise in dispute, the only question before us being as to the legal construction to be put on such facts. We therefore state them as follows: On the first day of June, 1932, one I. P. Fraizer together with Ralph W. Hawes were killed by the explosion of a tank of gasoline occurring at a certain oil plant being operated by Fraizer at Miami, Arizona, under the terms of a certain contract with the Texas Company, the owner of the plant. The claimants made application to the commission for compensation for the death of Hawes. The mat-

ter came before the commission in the usual manner without a formàl hearing, upon the claim of the widow and the affidavit of a witness to the accident and an award was made against the company, it being the insurance carrier for Fraizer. Thereafter the company filed a petition for rehearing denying liability on its part and alleging that the liability arising out of the death of Hawes was in the petitioner, which was the insurance carrier for the Texas Company. Petitioner asked leave to appear, which was granted, and on the 28th of January, 1933, a full hearing was held at which evidence in support of the claims of the respective parties was introduced and on the twenty-fourth day of May the commission made its findings and award allowing claimants a certain amount "payable . . . by the defendant insurance carriers," and finding the following facts:

"6. That R. W. Hawes was employed by I. P. Fraizer and his wages were fixed and paid by said I. P. Fraizer, and that the plant wherein he was employed was owned and operated by the Texas Company.

"7. That I. P. Fraizer was under a written agency contract with the Texas Company of California, in conducting the business of receiving, unloading, storing and distributing petroleum products of said company. That the work which I. P. Fraizer was performing under said contract, and the work which R. W. Hawes was performing at the time of his death, was a part or process in the trade or business of the Texas Company, and that said company retained supervision and control over said work, and said I. P. Fraizer and his employees in the performance thereof."

Thereafter and in due form application was made by petitioner for the writ of *certiorari* on which this matter is before us, the company not joining in the application, although after the writ was granted and the matter set down for hearing, it appeared and filed a brief in support of its contention made before the

commission that it was in no manner liable to pay compensation for the death of Hawe's.

So far as the right of claimants to compensation, or the amount of the compensation awarded, no issue is raised, it being admitted by all parties that an award is proper and that it is in the correct amount, the only question being as to who is obliged under the law to pay it. At the hearing before us the position taken by the parties was triangular, the claimants insisting that the company and the petitioner were jointly and severally responsible and the company and petitioner each urging that the other was solely liable.

The only question, therefore, before us is as to who should pay the award. It is urged by the claimants that the company is not in a position to object to the award made against it, in view of the fact that it was a party to the proceedings before the commission and did not join in the application for the writ of *certiorari*. We have previously held that while the Industrial Commission is not a court, nevertheless in making an award it acts in a judicial capacity. *Zagar* v. *Industrial Com.*, 40 Ariz. 479, 14 Pac. (2d) 472; *Doby* v. *Miami Trust Co.*, 39 Ariz. 228, 5 Pac. (2d) 187. We have also held that the findings of the Industrial Commission are in effect similar to the findings of the court or the verdict of a trial jury. *Blankenship* v. *Industrial Com.*, 34 Ariz. 2, 267 Pac. 203; *Federal Mutual Liability Ins. Co.* v. *Industrial Com.*, 31 Ariz. 224, 252 Pac. 512. And that the proceedings on *certiorari* from an award of the Industrial Commission are in substance an appeal and should ordinarily be governed by the same principles as appeals from the superior courts. *Maryland Casualty Co.* v. *Industrial Com.*, 33 Ariz. 490, 266 Pac. 11.

The usual rule, of course, is that where a judgment is rendered against two or more defendants and one of them does not appeal, the latter is not entitled to

the benefit of a reversal. 2 Freeman on Judgments, § 1167, pp. 2418, 2419, and that the judgment against the nonappealing defendant is final. *John Brickell Co.* v. *Sutro,* 11 Cal. App. 460, 105 Pac. 948; *Continental Paper Bag Co. et al.* v. *Bosworth,* (Tex. Com. App.) 269 S. W. 83. This rule has been approved and applied by us in the case of *Town of Flagstaff* v. *Gomez,* 23 Ariz. 184, 202 Pac. 401, 23 A. L. R. 661. We are of the opinion that, applying the general principles above set forth, the Ocean Accident and Guarantee Corporation, Limited, is not in a position to question in this proceeding the justice of the award of the commission against it, and such award must therefore be sustained.

We consider, then, the question of the award against petitioner. Sections 1421, 1422 and 1433, Revised Code 1928, read in part as follows:

"§ 1421. *Payment of Compensation.* Every employee, hereinbefore designated, who is injured, and the dependents of every such employee who is killed, by accident arising out of and in the course of his employment, wheresoever such injury has occurred, unless purposely self-inflicted, shall be entitled to receive, and shall be paid such compensation. . . .

"§ 1422. *Securing     Compensation;     Alternative Methods; Regulations.* Employers, but not including the state or its legal subdivisions, shall secure compensation to their employees in one of the following ways: . . . By insuring and keeping insured the payment of such compensation, with a corporation or association authorized to transact the business of workmen's compensation insurance in the state. . . .

"§ 1433. *Liability of Employer Failing to Comply.* Employers subject to and who fail to comply with the provisions of section 1422 shall not be entitled to the benefits of this article during the period of noncompliance, but shall be liable in an action under any other law of the state. . . . An employee of such employer, or his dependents in case death ensued, may, in lieu of proceeding against his employer by civil action in the courts, file his application with the

commission for compensation in accordance with the terms of this article, . . . and the compensation so determined shall be paid by such employer to the person entitled thereto. . . . ''

It will be seen by these sections that it is the ''employer'' and no one else who is authorized to secure compensation insurance, and that he is responsible for such compensation, if he has not secured a carrier of insurance therefor, in the manner allowed by statute.

The question then for consideration is, who was the ''employer'' of Hawes at the time of his death, within the meaning of the compensation act, the claimants insisting both Fraizer and the Texas Company were deceased's employer, while petitioner urges the employer was Fraizer alone, and the company with equal earnestness applies that term to the Texas Company only. The act does not attempt to define the general term ''employer,'' but does in section 1418, Revised Code 1928, establish a test for an independent contractor, such as petitioner claims Fraizer was, as follows:

'' . . . Where an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such contractor and the persons employed by him, and his sub-contractor and the persons employed by the sub-contractor, are, within the meaning of this section, employees of the original employer. A person engaged in work for another, and who while so engaged, is independent of the employer in the execution of the work, not subject to the rule or control of the person for whom the work is done, but engaged only in the performance of a definite job or piece of work, and subordinate to the employer only in effecting a result in accordance with the employer's design, is an independent contractor and an employer within the meaning hereof.''

We have discussed the meaning of section 1418, *supra,* in the cases of *Grabe* v. *Industrial Com.,* 38 Ariz. 322, 299 Pac. 1031, and *Fox West Coast Theatres, Inc.,* v. *Industrial Com.,* 39 Ariz. 442, 7 Pac. (2d) 582. In the first-named case we lay down the test as follows:

" .... Under section 1418, *supra,* if A procures B to do certain work for him which is a part or process in A's trade or business, and retains supervision or control over the work, then B and all B's employees and subcontractors to the Nth degree are, for the purposes of the Compensation Act, employees of A, no matter what the terms or method of employment or compensation. It is obvious that were this not so the beneficent purposes of the act could and would be easily defeated or evaded by unscrupulous employers through the aid of various dummy intermediaries. The statute therefore brushes aside all forms and subterfuges and provides that one just, simple, and definite test. If the work be part of the regular business of the alleged employer, does he retain supervision or control thereof? All other matters are of importance only as they throw light on this question."

—and approve the same in the later case.

We have carefully read each and all of the cases cited by petitioner in its brief and bearing upon this point. While the majority of the cases cited deal with alleged negligence on the part of an employee, a number are compensation cases. Without exception the general test laid down to determine the difference between an independent contractor and an employee is in substance whether the alleged employer retains supervision or control over the method of reaching a certain result, or whether his control is limited to the result reached, leaving the method to the other party, which is in effect the same as the test used by us in the two cases last cited. This rule is applied in the cases cited by petitioner to many different states of fact. In some cases it is held

that the relation existing is that of employer and employee, and in others that of independent contractor, the result in each case depending upon the facts of the particular case, and apparently in many instances upon whether the court construed the test above set forth strictly or liberally. We think that in compensation cases particularly the test should be liberally applied. The purpose of the act is to protect the employee rather than the employer, and for this reason we should give it such a construction as to discourage attempts on the part of unscrupulous employers to evade it.

The relationship between the Texas Company and Fraizer was fixed by a certain written contract which appears in the record. If on a reasonable and liberal construction of that contract it appears that the Texas Company procured Fraizer to do certain work for it, which was a part or process in the company's trade or business, and that it retained supervision or control over the work done by Fraizer, then Hawes, under the terms of section 1418, *supra,* was for the purposes of the compensation act an employee of the Texas Company, no matter what the terms or methods of employment or compensation were between the company and Fraizer or between Fraizer and Hawes, although for purposes other than those of the act the latter may have been an employee of Fraizer. This contract is voluminous and we need not set it forth in full. We quote, however, the principal sections thereof which apply to the question before us.

"First, the Company hereby appoints the Agent (and the Agent hereby accepts the appointment) as Agent for the Company at Miami, Arizona. The Agent's surety bond will be Twenty-five Hundred and 00/100 Dollars ($2,500.00).

"Second: The agent's duties are hereby fixed by this agreement, the rules and practices of the Company, and by instructions issued by the Company from time to time.

"Third: The Agent shall:

"(1) Strictly observe and obey the Company's instructions and faithfully perform all duties connected with his agency.

"(2) Promptly, correctly and in strict accordance with Company's instructions, account for all Company moneys, goods, products, equipment, etc., in his possession, or coming into his custody, and pay the Company for any shortages which may develop at any time.

"(3) Sell the products of the Company for cash, or on credit properly authorized, and not exchange or agree to exchange the Company's products for property or merchandise for private use or account; personally pay the Company on demand (a) the sum due on account opened by him without authority, and (b) any portion of any credit account which has been sold in excess of the credit limit placed thereon by the Company. . . .

"(6) Not retain the amount of compensation due him from the Company from or as a charge against funds or any other property of the Company for which he is accountable. . . .

"(9) At his expense, furnish all assistants and employees he may require for the proper and diligent operation of said station, and assume full direction and control over the responsibility for all such assistants and employees, and indemnify and save the Company harmless for loss arising out of or by virtue of all damage to property and/or injury to persons (whether or not such injury result in death) occasioned by the acts of the Agent, his assistants and/or employees. . . .

"Eighth: (1) This agreement shall continue in full force and effect until terminated by either party."

It further reasonably appears upon the face of the contract that Fraizer was to sell the company's products, which were gasoline, kerosene, lubricating oil and the like, at a price to be fixed by the company from time to time, and was to be reimbursed therefor by a certain commission. The company's products were not sold to Fraizer by it nor was he ever supposed to be the owner thereof. They belonged at all

times to the company, until sold by Fraizer under its instructions and upon conditions and circumstances fixed by it. Under this contract it is apparent that the work to be performed by Fraizer was a part or process in the trade or business of the Texas Company, to wit, the selling of gasoline, kerosene, lubricating oil and similar products owned by it and that his duties in so doing were fixed by the contract, the rules and practices of the company, and its instructions as issued from time to time. If this did not give the company power to direct Fraizer down to the minutest details, not merely as to the result he should reach but how he should reach it, the English language has no meaning. It is true, as suggested by petitioner, that the agreement might be terminated by either party at will, but so may the ordinary relations of master and servant, while the general rule is that an independent contractor has certain fixed rights and duties which can only be abrogated by the consent of both parties.

A contract almost identical in terms with the one in the case at bar has been construed by the Court of Appeals of the Third Appellate District in California in the case of *Fischer* v. *Havelock and the Texas Company*, (Cal. App.) 25 Pac. (2d) 864. It is true that the case involved the question of negligence and not the compensation act, but the vital question was whether, under the terms of the contract, Havelock was an independent contractor or an agent or employee of the Texas Company. Therein the court says, after reviewing the facts:

" . . . Where the one sought to be charged as principal has sold its products to the person distributing those products, and exercises no further control, the relationship is not one of principal and agent, but the person to whom the products are sold is an independent contractor. . . . When, however, a person is simply appointed as a sales agent, acting under the instructions and directions of the person owning the

products, the products to be sold for cash, or to authorized credit customers, routes selected by the agent, the relationship of principal and agent is held to exist. The right to control is one of the governing principles. Whether that control is exercised or the directions given is immaterial. In the case at bar, Havelock owned none of the products belonging to the appellant; his duties were fixed by the agreement, the rules and practices of the company, and instructions issued from time to time. Whether these rules and practices or instructions were given or furnished to Havelock is wholly immaterial. The right to do so is specifically given, and the cases are uniform to the effect that the right to direct and control is all that is necessary to support the conclusion that the relationship of principal and agent exists where one is simply a sales agent selling goods of another, whether upon commission or upon a fixed salary."

—and it was held that Havelock was an agent of the Texas Company and not an independent contractor. We think the reasoning followed in the cited case is unanswerable and correct, and that it applies with equal force to the present case, and we consequently hold that under the provisions of section 1418, *supra,* the Texas Company was, so far as the compensation act is concerned, the statutory employer of Hawes and under the terms of that act liable for compensation to him in case of his death or injury. Such being the case, the petitioner, being the insurance carrier of the Texas Company, was responsible for the amount of the compensation awarded the claimants, and the Industrial Commission properly so held.

The only remaining question is whether that liability was primary or secondary. The contract provided that Fraizer should "indemnify and save the Company harmless from loss arising out of or by virtue of all damage to property and/or injury to persons (whether or not such injury result in death) occasioned by the acts of the Agent, his assistants and/or employees."

It was by virtue of this provision apparently that the Ocean Accident and Guarantee Corporation, Limited, furnished the bond which it did. Counsel for petitioners has cited many cases to us, a number of which apparently sustain its contention that the liability of petitioner was secondary only. *Fox* v. *Dunning,* 124 Okl. 228, 255 Pac. 582; *Tahona Smokeless Coal Co.* v. *State Industrial Com.,* 128 Okl. 188, 261 Pac. 941; *Bogoratt* v. *Pratt & Whitney Aircraft Co.,* 114 Conn. 126, 157 Atl. 860; *O'Banner* v. *Pendlebury,* 107 N. J. L. 245, 153 Atl. 494; *Modlin* v. *Twin Falls Canal Co.,* 49 Idaho 199, 286 Pac. 612; *McEvilly* v. *L. E. Myers Co.,* 211 Ky. 31, 276 S. W. 1068; *Threshermen's Nat. Ins. Co. Ltd.* v. *Industrial Com.,* 201 Wis. 303, 230 N. W. 67; *Butler St. Foundry & Iron Co.* v. *Industrial Board,* 277 Ill. 70, 115 N. E. 122. It will be found, however, upon examining these cases that the states so holding almost invariably have a statutory provision not found in our compensation act which in effect provides that one who under the terms of our section 1418, *supra,* would be held to be the employer for the purposes of the act may shift his primary liability, as the Texas Company attempted to do by requiring Fraizer to indemnify it. In the absence of such a statute we are of the opinion that the plain and unambiguous terms of our act, after the question of who the statutory employer is has been determined, fixes a primary and not a secondary liability for compensation upon that employer and his insurance carrier, if any. This is but the natural conclusion to be drawn not only from the express language of the act but from the general principles found within it. As we said in the case of *Grabe* v. *Industrial Commission, supra:*

" . . . It is obvious that were this not so the beneficent purposes of the act could and would be easily defeated or evaded by unscrupulous employers

through the aid of various dummy intermediaries. The statute therefore brushes aside all forms and subterfuges and provides that one just, simple, and definite test. . . . "

While the language quoted was applied in the particular case to the determination of who was the employer, we think it applies with equal force to the determination of who is primarily liable for the compensation. We therefore hold that the statutory employer and his insurance carrier are primarily responsible to the injured employee for his compensation. If such employer desires to have some intermediary furnish a bond to indemnify him for any payments he or his insurance carrier are forced to make under the compensation act, his right to do so must be determined by the general principles of the law of contract, but no contract can have any effect upon the rights and duties of the respective parties, contrary to the terms of the act. For the foregoing reasons we hold, first, that under the evidence the Texas Company was the employer of Hawes for the purposes of the compensation act, made so by the terms of the act itself, and, second, that such employment created a primary and not a secondary liability as against the employer and its insurance carrier, the petitioner herein. It follows that the award against the petitioner was correct, and, since the Ocean Accident and Guarantee Company, Limited, has not seen fit to bring before us in the proper manner the question of whether the award against it was also a legal and proper one, the award of the Industrial Commission is affirmed.

ROSS, C. J., and McALISTER, J., concur.