[Civil No. 4773. Filed January 22, 1945.]

[155 Pac. (2d) 784.]

THE INDUSTRIAL COMMISSION OF ARIZONA, Appellant, v. T. J. BYRNE, as Trustee of IRON KING TRUST, an express trust, Appellee.

Mr. H. S. McCluskey, and Mr. David P. Jones, for Appellant.

Messrs. Byrne & McDaniel, for Appellee.

ROSS, C. J.—This action is brought by the trustee of the Iron King Mining Company to recover from the Industrial Commission $376.94 premiums claimed by the latter body as earned by it. The material facts are as follows:

The Iron King Mining Company was engaged in the mining and milling of ores in Yavapai County, and was insured with the Industrial Commission, under the Workmen's Compensation Law. In 1941 it leased certain portions of its mines to Fred Jensen and Fred McCallum, a partnership, by the terms of which the lessees were given permission to enter upon and to mine and extract ores for a period of six months from certain blocks in the mines, and for such privilege to pay a royalty to the owner on all ores extracted. The lessees were to do the mining in a good workmanlike manner, and to return the property in good repair. In doing so, they were not under the supervision nor control of the lessor.

The lower court gave judgment to the plaintiff for the amount sued for, together with interest and costs. The Industrial Commission has appealed, claiming that the judgment is against the evidence and contrary to law.

The claim of the Industrial Commission to the said premium is based upon the contention that Jensen and McCallum were the employees of the mining company and under its supervision and control. This contention is made under the last sentence of Section 56–929, Arizona Code Annotated 1939, as amended, reading as follows:

"(b) Lessees of mining property and their employees and contractors, engaged in the performance of work which is a part of the business conducted by the lessor and over which the lessor retains supervision or control, are within the meaning of this section employees of the lessor, and deemed to be drawing

such wages as are usually paid employees for similar work, and the lessor may deduct from the proceeds of ores mined by the lessees the premium required by this article to be paid for such employees.''

■ We have, in a number of cases, decided that the test to determine if one is an employer or an employee is whether the employer retains supervision or control of the work. *Grabe* v. *Industrial Comm.*, 38 Ariz. 322, 299 Pac. 1031; *Fox West Coast Theatres* v. *Industrial Comm.*, 39 Ariz. 442, 7 Pac. (2d) 582; *United States Fidelity & Guaranty Co.* v. *Industrial Comm.*, 42 Ariz. 422, 26 Pac. (2d) 1012.

■ Under the terms of the above-quoted language the lessor is not the employer of the lessee of a mining claim unless he has supervision or control of the work, and unless Jensen and McCallum, in the extraction of the ore in the mining company's mine, were under the control and supervision of the mining company, the latter may not ''deduct from the proceeds of ores mined by the lessees the premium required by this article to be paid for such employees.'' Section 56–929, *supra*. In other words, if Jensen and McCallum were independent contractors, which we certainly think they were under Section 56–928, Arizona Code Annotated 1939, there was no requirement that the mining company insure them and their employees.

The other contentions presented by the Industrial Commission we have carefully considered and are of the opinion there is no merit to them.

The judgment is affirmed.

STANFORD, J., concurs.

LaPRADE, Judge (specially concurring).

I concur in the opinion of Chief Justice ROSS, that Jensen and McCallum were independent contractors and that the Industrial Commission is not entitled to charge the Iron King Mining Company a premium for allegedly

carrying industrial insurance upon Jensen and Mc-Callum as employees of the Iron King. The Iron King Mining Company is entitled to recover the retained premium from funds belonging to it and in the hands of the Industrial Commission.

I believe that the opinion should reflect the controlling facts, to which the law is to be applied, and from which the conclusion is drawn.

The sole question to be determined is whether or not these lessees were independent contractors or were employees within the meaning of Section 56–928 and Section 56–929, Arizona Code Annotated (1939), as amended. Section 56–928, in part, reads as follows:

" . . . Where an employer procures work to be done for him by a contractor *over whose work he retains supervision or control,* and such work is a part or process in the trade or business of the employer, then such contractor and the persons employed by him, and his subcontractor and the persons employed by the subcontractor, are, within the meaning òf this section, employees of the original employer. A person engaged in work for another, and who while so engaged, is independent of the employer in the execution of the work, not subject to the rule or control of the person for whom the work is done, but engaged only in the performance of a definite job or piece of work, and subordinate to the employer only in effecting a result in accordance with the employer's design, is an independent contractor and an employer within the meaning hereof. (Laws 1925, ch. 83, § 44, p. 345; rev., R. C. 1928, § 1418.) " (Italics supplied.)

The last sentence of Section 56–929, as amended, reads as follows:

" (b) Lessees of mining property and their employees and contractors, engaged in the performance of work which is a part of the business conducted by the lessor *and over which the lessor retains supervision or control,* are within the meaning of this section employees of the lessor, and deemed to be drawing such wages as are usually paid employees for similar work, and the

lessor may deduct from the proceeds of ores mined by the lessees the premium required by this article to be paid for such employees." (Italics supplied.)

The written lease, in part, reads as follows:

(1) "The Iron King gives permission to said lessees to enter into and mine and extract ore, but not to sublease, the blocks of ground described as follows:" (description of veins)

(2) "The ore may be delivered to the Iron King mill or to other suitable custom plants."

(3) "Royalty shall be twenty per cent (20%) of the value of the ore after freight and treatment charges have been deducted."

(4) "This lease shall be for a period of six months from date. At termination of this period, if lessees have complied with the terms herein, said lessees shall be given preference for renewal. This lease may be terminated by either party upon thirty days notice in writing, but not without actual reason. All improvements such as pipe, rail and timber shall revert to the lessor at termination of this lease."

(5) "Industrial insurance shall be carried on lease employees by the Iron King and charged to the lease account."

(6) "Mining of ore under this lease shall be done in a safe and workman like manner. If necessary, all openings shall be timbered or filled to protect present drifts, haulage ways and crosscuts and shafts. *No mining will be permitted, which in the opinion of the Iron King management will endanger the life of the employees of the lessees or impair the condition of shafts and level mine openings.*" (Italics supplied.)

(7) "The lessee shall be responsible for the upkeep and proper maintenance which is the property of the lessor, and shall return same in good repair to lessor at termination of this lease."

In 35 Am. Jur., Master and Servant, Section 5 defines an independent contractor as follows:

"The determination of whether a relationship is strictly that of master and servant or is an indepen-

dent contractor relationship, or whether a person is an independent contractor or merely an employee or a servant, depends upon the power of control which the employer is entitled to exercise over the person in question. The relation is that of independent contractor where it appears that a person employed to do work is not, in the execution and performance of such work, subject to the control of the employer, but is free to execute the work without being subject to the orders of the employer with respect to the details thereof. If, however, one engages another to perform certain work, retaining control of the conduct of the person thus engaged with respect to the work to be done or the order, method, and plan of the work, the relation is that of master and servant, and not of employer and independent contractor.''

See also the opinion of Judge Baker in *Swansea Lease, Inc.* v. *Molloy,* 1919, 20 Ariz. 531, 183 Pac. 740.

An examination of this lease shows that it was to run for a six-months' period with preference of renewal in the lessees, provided they had complied with the terms of the lease. I am of the opinion that the provisions of the lease relating to industrial insurance extended the privilege to the Iron King to carry industrial insurance on the employees of the lessees and charge the cost thereof to the lease account. It is significant that if any industrial insurance was carried the cost thereof should be borne by the lessees and not the lessors. The crux of this case is to be found in Section 6 of the lease above quoted, which, in part, provides that ''no mining will be permitted which in the opinion of the Iron King management will endanger the life of the employees of the lessees, or impair the condition of shafts and level mine openings.'' It will be noted that this prohibition did not run against the lessors themselves. Presumably, the company might have thought that if the lessees, or either of them, intended to personally mine, they would proceed carefully in response to the human instinct of self-preserva-

tion. For all that appears, the lessees were permitted to produce as much or as little ore as they pleased; they were under no limitation as to the hours to be worked by themselves or their employees; they were privileged to employ whom they pleased and as many as they pleased; and, they had the sole authority to lay out the work, select the tools, and direct the entire mining operation. The entire cost of the mining operation was under their jurisdiction. For all practicable purposes they were the owners of the veins to be mined, relieved of capital cost, taxes, and inherent risks of ownership. It was their privilege to have the ore processed at a custom plant of their own selection. An examination of the lease provisions in their entirety discloses that the lessor had no interest in the methods to be employed by the lessees in producing the ore, and had no interest in the results to be obtained, other than to be paid its royalty. It had no authority to supervise, order, request, or even suggest any course of conduct in the mining operation.

The effect of Section 6 of the lease was to lodge in the lessor the right to put a halt to the entire undertaking if, in its opinion, the lessees mined in a manner to endanger the lives of the employees of the lessees or in a manner to impair the condition of the shafts and level mine openings. Under the terms of the above-quoted code sections, the lessor is not the employer of the lessee of a mining claim unless he has retained supervision or control of the work. These code sections have heretofore been considered and interpreted by this court in *Grabe* v. *Industrial Comm.*, 1931, 38 Ariz. 322, 299 Pac. 1031; *Fox West Coast Theatres, Inc.* v. *Industrial Comm.*, 1932, 39 Ariz. 442, 7 Pac. (2d) 582; *United States Fidelity & Guaranty Co.* v. *Industrial Comm.*, 1933, 42 Ariz. 422, 26 Pac. (2d) 1012. The analysis and reasoning contained in those cases, when applied to the facts in the instant case, conclusively

establishes that these lessees were not employees of the lessor company within the meaning of the above-named code sections.