713 P.2d 297

HUNT BUILDING CORPORATION, Petitioner Employer,

State Compensation Fund, Petitioner Carrier,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Jesus Villaescusa, Respondent Employee,

R.L. McGuckin dba R.L. McGuckin & Company, Respondent Employer,

Jesse's Concrete, Inc., Respondent Employer.

No. 1 CA–IC 3122.

Court of Appeals of Arizona, Division 1, Department A.

May 14, 1985.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix by James F. Crane, Tucson, for petitioners Employer and Carrier.

Dennis P. Kavanaugh, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Tretschok, McNamara & Clymer, P.C. by Patrick R. McNamara, Tucson, for respondent Employee and Jesse's Concrete.

OPINION

BROOKS, Judge.

In this special action review of an Industrial Commission award, the issue is whether the administrative law judge erred in finding that claimant was a statutory employee of Hunt Building Corporation (Hunt).

Jesus Villaescusa (claimant) severely injured his left leg while operating his augar curbing machine. He filed a claim for benefits alleging Hunt and Richard McGuckin as employers. The claim was denied by the State Compensation Fund and a hearing was requested.

Claimant then filed a second claim alleging "The McGuckin Co." as his employer. The State Compensation Fund also denied this claim alleging that it was not the carrier for "R.L. McGuckin & Co." ("McGuckin" hereafter refers to either Richard McGuckin or his company). Subsequently, the commission entered an award finding that McGuckin had no worker's compensation insurance and finding the claim noncompensable. Claimant protested the award.

Claimant filed a third claim for benefits alleging "Jesse's Concrete, Inc." as his employer. The State Compensation Fund denied the claim and claimant requested a hearing.

A consolidated hearing was conducted and the sole issue litigated was whether claimant was an independent contractor or an employee of either Hunt, McGuckin or Jesse's Concrete, Inc. at the time of the injury. The administrative law judge found claimant to be a statutory employee of Hunt but not of McGuckin. He also found insufficient evidence that claimant was an employee of Jesse's Concrete, Inc. The award was affirmed on administrative review and Hunt brought this special action.

FACTS

Hunt, a business engaged in the construction of large housing projects, contracted with Quechan Tribal Housing Au-

thority to build 94 single family dwellings on the Fort Yuma Indian Reservation near Winterhaven, California. By the terms of the contract, Hunt was to supervise all construction of the project. As was its usual course of business, Hunt contracted out virtually every facet of actual construction. Hunt subcontracted the curb and gutter work to Frontier Concrete and the paving and earth work to McGuckin. McGuckin also subcontracted out to various contractors all the work it was to perform under the Hunt-McGuckin contract.

When it appeared that Frontier Concrete was not meeting the construction schedule, Hunt's general superintendent over the project sought a substitute curb subcontractor. McGuckin suggested that claimant be considered for the job and proceeded to contact him on Hunt's behalf. Frontier Concrete was then released from its contract, and claimant met with Hunt's superintendent and McGuckin to negotiate payment for the work. Because the Quechan Tribal Housing Authority required approval of all subcontractors and Hunt did not want to delay the curbing work in order to obtain the necessary approval, no written subcontract was entered into directly with claimant. To circumvent the subcontractor approval requirements, the Hunt-McGuckin contract was simply amended to make curb work a part of McGuckin's responsibility. The price for this work, as orally agreed upon by Hunt and claimant, was added to the total amount of the revised Hunt-McGuckin contract.

Claimant provided his own equipment and brought several men to work with him on the curbing project. The work was anticipated to take less than two weeks. Although claimant was previously the president and general manager of Jesse's Concrete, Inc., he negotiated this particular curbing work on his own behalf. Claimant

was injured his first day on the job prior to any curbing actually being installed.

ANALYSIS

In determining whether Hunt was claimant's statutory employer, the administrative law judge considered A.R.S. § 23–902(B), which provides:

When an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such contractors and the persons employed by him, and his sub-contractor and persons employed by the sub-contractor, are, within the meaning of this section, employees of the original employer.

■ The term "statutory employer" refers to one compelled by law to pay compensation benefits to remote employees, i.e., employees of another. *Young v. Environmental Air Products*, 136 Ariz. 158, 665 P.2d 40 (1983). Two elements are necessary for the application of A.R.S. § 23–902(B): first, the employer must procure work to be done by a "contractor"[1] over whose work he "retains supervision or control", and, second, the work entrusted to the contractor must be a "part or process in the trade or business of the employer." The administrative law judge found that claimant's work was a part or process of both Hunt's and McGuckin's business but that Hunt, and not McGuckin, was a statutory employer because it procured the work to be done and retained supervision over claimant.

In analyzing the "supervision or control" requirement of A.R.S. § 23–902(B), the administrative law judge applied the traditional "right to control" test for distinguishing an employee from an independent contractor under A.R.S. § 23–902(C).[2]

1. In the context of A.R.S. § 23–902(B), the term "contractor" is used in its generic sense and refers to the person or legal entity with whom the employer has contracted.

2. A.R.S. § 23–902(C) provides:
A person engaged in work for another, and who while so engaged is independent of the employer in the execution of the work and not subject to the rule or control of the person for whom the work is done, but is engaged only in the performance of a definite job or piece of work, and is subordinate to the employer only in effecting a result in accordance with the employer's design, is an independent contractor,

The test of the usual employer-employee relationship is the employer's right to control the methods of doing the work. *Home Ins. Co. v. Industrial Commission,* 123 Ariz. 348, 599 P.2d 801 (1979). The right to control the methods of doing the work is often an inference made after analyzing such factors as:

the duration of the employment; the method of payment; who furnishes necessary equipment; the right to hire and fire; who bears responsibility for workmen's compensation insurance; the extent to which the employer may exercise control over the details of the work, and whether the work was performed in the usual and regular course of the employer's business.

123 Ariz. at 350, 599 P.2d at 803. If the right to control or supervise goes no further than is necessary to ensure a satisfactory end result, it does not establish an employer-employee relationship.

Hunt argues that these factors indicate that claimant was an independent contractor. In that regard, the administrative law judge found that the curbing work was anticipated to take less than two weeks; that this work required special equipment, skill and expertise possessed only by claimant and his crew on this job; that claimant furnished his own equipment; that claimant negotiated a lump sum fee as payment for the work; that the lump sum was calculated on the basis of lineal footage of curbing installed and included an amount for the use of equipment; and that neither Hunt nor McGuckin actually controlled the execution of the details of claimant's work. Accepting as true the factual findings of the administrative law judge, the undisputed facts and the facts overwhelmingly supported in the record, we find that claimant's status was clearly that of an independent contractor. It is virtually undisputed that claimant was independent of Hunt and McGuckin in the execution of his work and was not subject to anyone's rule or control beyond the necessary control to ensure his

and an employer within the meaning of this

final compliance with the contract plans and specifications.

Claimant argues that the "right to control" used to determine employee or independent contractor status under A.R.S. § 23–902(C) should not apply to the definition of statutory employment under A.R.S. § 23–902(B). We disagree.

A case which is not directly on point, but which provides guidance, is *U.S.F. & G. v. Industrial Commission,* 42 Ariz. 422, 26 P.2d 1012 (1933). This case involved the explosion of a gasoline tank at an oil plant in Arizona owned by "Texas Company" and operated by one I.P. Frazier. Frazier and his employee, R.W. Hawes, were both killed in the explosion. Hawes' survivors applied for worker's compensation death benefits. An award was made against Frazier's insurance carrier, which petitioned for rehearing denying its liability and alleging that liability rested with the insurance carrier for Texas Company.

The commission's findings and award allowed claimants a certain amount payable by both carriers. The findings of fact were that Hawes was employed by Frazier, that Texas Company owned the plant, that Frazier was an agent of Texas Company, that the work of both Frazier and Hawes was a part or process of the trade or business of Texas Company, and that Texas Company retained supervision and control over the work which Frazier and his employees performed. Our Supreme Court first addressed the question of determining who was Hawes' employer at the time of his death. It analyzed the statutory employer section, Revised Code 1928 § 1418 (currently A.R.S. § 23–902(B) and (C)). The court stated:

If on a reasonable and liberal construction of [the contract between Texas Company and Frazier] it appears that the Texas Company procured Frazier to do certain work for it, which was a part or process in the company's trade or business, and that it retained supervision or control over the work done by Frazier, then Hawes ... was for the purposes of

section.

the compensation act an employee of the Texas Company....

42 Ariz. at 430, 26 P.2d at 1015. After quoting sections of the contract which detailed Frazier's duties, the court concluded that the "part or process" test was met, and then stated:

> If this did not give the company power to direct Frazier *down to the minutest details, not merely as to the result he should reach but how he should reach it,* the English language has no meaning.

42 Ariz. at 432, 26 P.2d at 1016. (Emphasis added.) The court found Frazier to be an agent of Texas Company:

> we consequently hold that under the provisions of section 1418, *supra,* the Texas Company was, so far as the compensation act is concerned, the statutory employer of Hawes and under the terms of that act liable for compensation to him in case of his death or injury.

42 Ariz. at 433, 26 P.2d at 1016.

In *Jaime v. Industrial Commission,* 14 Ariz.App. 70, 480 P.2d 685 (1971), we addressed whether the petitioner was a statutory employee of National Metals Company (National) under A.R.S. § 23-902(B). National's business involved dismantling obsolete aircraft. It hired Edwards to process certain metals and Edwards hired the petitioner who was injured while so employed. Petitioner conceded that an independent contractor relationship existed between National and Edwards, but argued that National had the same power of supervision and control over petitioner as did Edwards so as to make A.R.S. § 23-902(B) govern petitioner's status. The court affirmed the commission award, which had denied petitioner compensation, because evidence showed *"the methods* used by Edwards in carrying out their contract were not subject to the supervision or control of National." 14 Ariz.App. at 72, 480 P.2d at 687. (Emphasis added.) *See also Employers Mut. Liability Ins. Co. v. Industrial Commission,* 18 Ariz.App. 403, 502 P.2d 1080 (1972).

These cases support our conclusion that the test to be applied in determining whether an employer "retains supervision or control" within the meaning of A.R.S. § 23-902(B) is whether the employer retains the right to supervise or control the methods or details of the work to be performed. Clearly that test was not met as it applies to claimant in the instant case.

The dissent would award worker's compensation benefits to an independent contractor. Such a concept has far-reaching ramifications and should receive close legislative scrutiny. It is not a proper subject for judicial resolution.

For the foregoing reasons, we conclude that the administrative law judge erred in finding that claimant was Hunt's statutory employee.

Award set aside.

HAIRE, P.J., concurs.

GRANT, Judge, dissenting.

I dissent. The evidence clearly supports the administrative law judge's conclusions and therefore I would affirm the award. This court will affirm an award that is legally correct though we disagree with the reasons given to support it. *Inspiration Consol. Copper Co. v. Industrial Comm'n,* 128 Ariz. 288, 625 P.2d 351 (App. 1981). As we know from the record Hunt is a business engaged in the construction of large housing projects. As is its usual course of business Hunt contracted out virtually every facet of actual construction. (For a description of how a large construction company does business *see* the dissent in *Tanner Companies v. Superior Court,* 144 Ariz. 141, 696 P.2d 693 1985.)

The majority looks at the two part test used by the administrative law judge for determining whether Hunt was claimant's statutory employer under A.R.S. § 23-902(B) and decides that the administrative law judge reached a wrong conclusion as to the first part of the test.

The first part of the test is the "supervision or control" requirement of A.R.S. § 23-902(B) for which the administrative law judge applied the "right to control"

test to distinguish an employee from an independent contractor under A.R.S. § 23–902(C). Claimant has argued that A.R.S. § 23–902(B) requires a different degree of supervision or control than the control indicia used to determine employment under A.R.S. § 23–902(C). The majority disagrees. I agree with claimant that the supervision or control element of A.R.S. § 23–902(B) cannot be limited to the employer's right to control the details of the work since the statute requires an employer to have supervision or control over the work to be done by a contractor. Because a contractor is not the statutory employer's actual employee, the statutory employer need only supervise or control the end result of the work.

The test developed by case law in Arizona to determine whether one is doing work for another as an "independent contractor" or "employee" within the worker's compensation act is whether the alleged employer retains the "right to control" the method of reaching the required result or whether his control is limited to the result reached leaving the method to the other party. *Home Ins. Co. v. Industrial Comm'n,* 123 Ariz. 348, 599 P.2d 801 (1979); *Scott v. Rhyan,* 78 Ariz. 80, 275 P.2d 891 (1954); *Garcia v. City of South Tucson,* 131 Ariz. 315, 640 P.2d 1117 (App.1981).

In analyzing A.R.S. § 23–902 it appears that subsection A defines the statutory employer, subsection B defines a subcontractor (or its employee) who *is* an employee of the statutory employer (sometimes referred to as the "remote employer") and subsection C defines an independent contractor who is *not* an employee of the putative statutory employer. The question to be answered in this appeal is whether the test for right to control by the employer is the same under subsections B and C. There appears to be no Arizona case that differentiates between the two. The test applied in the reported cases is the same under both subsections. However, our legislature clearly intended to differentiate between the two. Our statute is taken from Utah, U.C.A. § 35–1–42, (based on § 3110, Laws of Utah 1919) where the statute is not divided into subsections. Laws 1925, Chap. 83, § 44. Our statute was also undivided until 1945 when the legislature split it into the three subsections without changing the substantive wording. Section 56–928, Ariz. Code of 1939 Annotated (effective June 9, 1945). We must presume they did so for a reason.

Under subsection B, a statutory employment relationship is not established simply because claimant was a contractor procured by Hunt. Hunt is claimant's statutory employer only if it retained supervision or control over claimant's work and the work was a part or process of Hunt's trade or business. The administrative law judge found claimant was procured by Hunt. This finding is supported by the evidence. McGuckin contacted claimant about the job on Hunt's behalf. Claimant met with Mr. Landoll to negotiate payment for the work and payments were to be made through McGuckin only to avoid subcontractor approval requirements. By terms of the general contract for the project with the Indian Housing Authority, Hunt was responsible for supervision of all work on the project, including curb work.

The record reveals that Hunt retained supervision or control over the end result of the curbing work. Landoll discussed with claimant the work to be performed prior to its commencement. At one point, Landoll examined claimant's equipment and informed him that it would be inadequate to pour concrete to specification. Additionally, Landoll's job required him to ensure that sufficient manpower and equipment were being used to complete construction on schedule. *See Young v. Environmental Air Products, Inc.,* 136 Ariz. 158, 665 P.2d 40 (1983) (the supervision or control element of A.R.S. § 23–902(B) was satisfied where a manufacturer's employee supervised construction performed by a subcontractor).

Utah law is persuasive since our statute is substantially the same. The case of *Rustler Lodge v. Industrial Comm'n,* 562 P.2d 227 (Utah 1977) supports this dissent. The claimant was an experienced drywall installer associated with an independent contractor. The Rustler Lodge contacted

the contractor business about installation of drywall on its premises. The contractor business was not interested but claimant agreed individually to do the work for a specified rate using his own special tools. A finding that claimant was the lodge's employee and an award of compensation was sustained. The case sets forth a test for determining whether one is an employee or an independent contractor: "an independent contractor can employ others to do the work and can accomplish the contemplated result without the consent of the contractee, while an employee cannot substitute another in his place without the consent of the employer." *Id.*, 562 P.2d at 228, quoting *Ludlow v. Industrial Comm'n*, 65 Utah 168, 235 P. 884 (1925). Here Villaescusa, the claimant, could not substitute another to do the curbing without Hunt's consent.

There is also support for affirming the trial court in the case of *Pinter Constr. Co. v. Frisby*, 678 P.2d 305 (Utah 1984), in which the facts are quite similar to those in our case. Frisby was injured while constructing a metal building for Pinter. The question on appeal was whether Frisby was a "statutory employee." Citing the Utah statute, which is like A.R.S. § 23–902(B), the Utah Supreme Court set forth two purposes of the statute: (1) "to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor" and (2) "to prevent an unscrupulous principal contractor who contracts out all or most of his work from avoiding responsibility for insuring his subcontractors." *Id.*, at 307. The Utah court in affirming the award of compensation stated that it is possible for an individual to be an "independent contractor" in a common-law sense and yet be a "statutory employee" for worker's compensation purposes. In *Pinter Constr. Co. v. Frisby*, as in our case, the claimant was both the owner and employee of a subcontracting company. The Utah court held that this did not prevent a determination that he was a statutory employee of the principal contractor.

The majority complains that the dissent would award worker's compensation bene-

fits to an independent contractor. This is untrue. I would award compensation to a contractor or subcontractor working in the capacity of an employee as defined by A.R.S. § 23–902(B). In which case he would not be working in the capacity of an independent contractor as defined by A.R.S. § 23–902(C). This concept, rather than being far-reaching, is simply what is set forth in the statute, and the majority's plea for legislative scrutiny is not only unnecessary but inappropriate.

I would affirm the award on the basis that the supervision or control element of the statute was satisfied. Although not reached by the majority I would also necessarily affirm the second part of the test on the basis that claimant's work was "a part or process in the trade or business" of Hunt. *See Lee v. Chevron Oil Co.*, 565 P.2d 1128 (Utah 1977).