IN THE
# ARIZONA COURT OF APPEALS
### DIVISION ONE

MENO'S CONSTRUCTION, L.L.C.****, *Petitioner/Employer*,

AIG INSURANCE COMPANY****, *Petitioner/Carrier*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

VICTOR M. REYES, *Respondent Employee*,

THE YOUNGER BROTHERS GROUP, INC.*; GENARO'S FRAMING CONSTRUCTION, L.L.C.***, *Respondent Employers*,

COPPERPOINT INDEMNITY INSURANCE COMPANY*; TRAVELERS INSURANCE COMPANY***, *Respondent Carriers*,

ROBERTO CARLOS NAVARRO PADILLA**; JUAN ESTOPELLAN*****, *Respondent Uninsured Employers*,

SPECIAL FUND DIVISION/NO INSURANCE SECTION**, *****, *Respondent Party in Interest*.

---

SPECIAL FUND DIVISION/NO INSURANCE SECTION**, *****, *Petitioner/Party in Interest*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

VICTOR M. REYES, *Respondent Employee*,

THE YOUNGER BROTHERS GROUP, INC.*, GENARO'S FRAMING CONSTRUCTION, L.L.C.***, MENO'S CONSTRUCTION, L.L.C.****, *Respondent Employers*,

COPPERPOINT INDEMINTY INSURANCE COMPANY*, TRAVELERS
INSURANCE COMPANY***, AIG INSURANCE COMPANY****,
*Respondent Carriers*,

ROBERTO CARLOS NAVARRO PADILLA**, JUAN ESTOPELLAN*****,
*Respondent Uninsured Employers*.

No. 1 CA-IC 18-0041 and 1 CA-IC 18-0042
(Consolidated)
FILED 5-9-2019

Special Action - Industrial Commission
ICA Claim Nos.  20153-6580041**, *****, 20160-420048*, ***, ***
(Consolidated)
Carrier Claim Nos. 15102126*, ***, ****, None**, *****
The Honorable Rachel C. Morgan, Administrative Law Judge

**AWARD SET ASIDE**

COUNSEL

Jardine Baker Hickman & Houston P.L.L.C., Phoenix
By Stephen C. Baker
*Counsel for Petitioner Employer Meno's Construction, L.L.C. and Petitioner
Carrier AIG Insurance Co.*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Taylor & Associates P.L.L.C., Phoenix
By Javier C. Grajeda
*Counsel for Respondent Employee*

CopperPoint Mutual Insurance Company, Phoenix
By Mark A. Kendall
*Counsel for Respondent Employer The Younger Brothers Group, Inc. and
Respondent Carrier CopperPoint Indemnity Insurance Co.*

Hendrickson & Palmer, P.C., Phoenix
By Adam P. Palmer
*Counsel for Respondent Employer Navarro Padilla*

Hoffman Kelley Lopez, L.L.P, Scottsdale
By Michelle D. Lopez
*Counsel for Respondent Employer/Carrier Genaro's Framing Construction L.L.C.*

Lundmark Barberich La Mont & Salvin, P.C., Phoenix
By Kirk A. Barberich, Danielle Vukonich
*Counsel for Petitioner Party in Interest Special Fund Division/No Insurance Section*

---

**OPINION**

Judge Kenton D. Jones delivered the Opinion of the Court, in which Presiding Judge James B. Morse Jr. and Judge Jon W. Thompson joined.

---

**J O N E S**, Judge:

¶1 In this consolidated statutory special action, Meno's Construction, L.L.C. and AIG Insurance Co. (collectively, MC) and the Special Fund Division/No Insurance Section (the Fund) challenge an Industrial Commission of Arizona (ICA) decision finding MC and Juan Estopellan were Victor Reyes's employers at the time of his December 2015 industrial injury. We affirm the factual findings and conclusions of the administrative law judge (ALJ) with respect to those employers. We also hold that an ALJ is required to evaluate the liability of each contractor and subcontractor made a party to a workers' compensation claim. Because the ALJ did not do so in this case, we set aside the award.

## FACTS AND PROCEDURAL HISTORY

¶2 In 2012, Taylor Morrison contracted with Younger Brothers Group, L.L.C. (YB) to complete the framing for various new home construction and lot improvement projects in and around Phoenix,

including at Lot 31 of a housing development in Gilbert.[1] That contract required YB to provide supervision, labor, materials, and services necessary to complete the work and provided that "no such subcontracting shall relieve Younger Brothers from its obligations under th[e] agreement."

¶3        YB subcontracted the framing work on Lot 31 to a second framing contractor, Genaro's Framing Construction, L.L.C. (GFC). Pursuant to the independent contractor agreement, YB would provide general guidelines and framing materials for each job, but GFC was responsible for supplying the labor and tools, carrying workers' compensation insurance for employees, and controlling the day-to-day operations of the jobsite. YB did not return to the jobsite until it was completed, and then only to inspect the work and approve payment. Because GFC did not employ any actual framers, it subcontracted the Lot 31 job to a third framing contractor, MC, under similar terms.

¶4        In 2015, MC assigned responsibility for completing the framing on Lot 31 to Estopellan, as it occasionally did when Estopellan sought additional work. At the time, Estopellan was also employed as a foreman for YB and responsible for supervising various projects including one near Lot 31. Nonetheless, Estopellan sometimes accepted other jobs through his own sole proprietorship. MC did not provide tools, materials, or labor; did not require any proof Estopellan maintained workers' compensation insurance; and did not direct or supervise Estopellan's work. As with YB and GFC, MC did not pay for a job until it had inspected and approved the work.

¶5        Estopellan immediately hired Roberto Navarro to help with Lot 31, as was Estopellan's practice when working side jobs, and paid Navarro a lump sum for the job via personal check. Estopellan then directed workers to Navarro, who provided the day-to-day instruction and supervision. The framing crew received safety training and t-shirts from GFC.

¶6        Reyes, the injured worker, met Navarro and Estopellan in September 2015 when he arrived on a construction site looking for work. Reyes immediately began to work with the two men, first as an assistant, and then as a framer, at various locations. Over the next few months,

---

[1]     We view the evidence adduced at the hearing in the light most favorable to upholding the ICA's findings and award. *See Polanco v. Indus. Comm'n*, 214 Ariz. 489, 490-91, ¶ 2 (App. 2007) (quoting *Roberts v. Indus. Comm'n*, 162 Ariz. 108, 110 (1989)).

Navarro told Reyes when and where to work and paid him weekly via cash or personal check. However, Navarro received a written budget and instructions from Estopellan, who would visit the jobsites in a YB truck, deliver tools and materials, and supervise the work.

¶7 On December 21, 2015, Reyes injured his hip and wrist after falling from a ladder while working at Lot 31. Navarro notified Estopellan, as he did with all issues that arose at a jobsite. Estopellan then reported the injury to MC, as MC had requested, and directed Reyes to the specific clinic MC preferred. Ultimately, YB inspected and approved the framing on Lot 31 but never paid Estopellan directly for any work on that project.

¶8 Reyes reported his injury to the ICA, which resulted in consolidated claims against five potential employers — Navarro, Estopellan, MC, GFC, and YB — and their insurers, all of whom denied liability for the claim. Because neither Navarro nor Estopellan had workers' compensation insurance, the Fund was also joined in the action. *See* Ariz. Rev. Stat. (A.R.S.) §§ 23-907,[2] -1065 (governing the creation of and expenditures from a special fund to compensate employees whose employers fail to secure required workers' compensation insurance).

¶9 After a three-day hearing, the ICA issued a consolidated decision in which the ALJ found Estopellan had employed both Navarro and Reyes to work on Lot 31 and MC maintained control over the project. Therefore, the ALJ concluded that Estopellan was Reyes's direct employer, MC was Reyes's statutory employer, and both were responsible for payment of Reyes's workers' compensation claim. The ALJ made no findings regarding GFC's or YB's status or liability. The ICA decision was affirmed upon review. MC and the Fund separately petitioned for special action review of the ICA's award and decision upon review, and the cases were consolidated for our review. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(2), 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

**DISCUSSION**

**I. Estopellan Was Reyes's Employer.**

¶10 The Fund argues Estopellan was not an employer subject to the Workers' Compensation Act as defined in A.R.S. § 23-902(A). We will not disturb the ALJ's factual findings unless clearly erroneous and will

---

[2] Absent material changes from the relevant date, we cite the current version of rules and statutes.

affirm so long as the findings were properly made and support the award. A.R.S. § 23-951(B); *Jenkins v. Indus. Comm'n*, 77 Ariz. 377, 386 (1954) (citing *Todaro v. Gardner*, 72 Ariz. 87, 91 (1951)). "A finding of fact is not clearly erroneous if substantial evidence supports it, even if substantial conflicting evidence exists." *Ramsey v. Ariz. Registrar of Contractors*, 241 Ariz. 102, 109, ¶ 22 (App. 2016) (quoting *Kocher v. Dep't of Revenue of Ariz.*, 206 Ariz. 480, 482, ¶ 9 (App. 2003)). However, Estopellan's status as an employer is a conclusion of law subject to *de novo* review. *Faraghar v. Indus. Comm'n*, 184 Ariz. 528, 531 (App. 1995) (citing *Cent. Mgmt. Co. v. Indus. Comm'n*, 162 Ariz. 187, 189 (App. 1989), and *Anton v. Indus. Comm'n*, 141 Ariz. 566, 569 (App. 1984)).

**¶11** The Fund contends Estopellan was not an employer required to maintain workers' compensation insurance because he did not have a "hiring plan" or "own and operate a complex framing company." But the Workers' Compensation Act does not require a formal hiring process or complex operations. *See Putz v. Indus. Comm'n*, 203 Ariz. 146, 151, ¶¶ 25-26 (App. 2002) (explaining there is no bright-line rule for determining when a self-employed employer is subject to the Act). Instead, an employer is subject to the Workers' Compensation Act "when he employs at least one employee in the regular course of his business." *Donahue v. Indus. Comm'n*, 178 Ariz. 173, 179 (App. 1993); *see also* A.R.S. § 23-902(A) (defining an employer subject to the Act to include "every person who employs any workers or operatives regularly employed in the same business or establishment under contract of hire" and defining "regularly employed" to mean "all employments, whether continuous throughout the year, or for only a portion of the year, in the usual trade, business, profession or occupation of an employer").

**¶12** The ALJ found that "Estopellan was operating a side business known as Juan Estopellan Construction, which includ[ed] framing, at the time of [Reyes]'s injury and that he hired Roberto Navarro to run the injury jobsite, to hire men to perform the work, and to oversee the work being performed." This finding is supported by the record and justifies the conclusion that Estopellan employed at least one employee in the regular course of his business as a sole proprietor. Accordingly, we find no error in the ALJ's findings and conclusion that Estopellan was an employer subject to the Act.

## II. All Employers Are Jointly Responsible for Payment of an Injured Worker's Claim.

¶13    The Fund argues the ICA erred in holding Estopellan and MC jointly responsible for Reyes's injuries. In advancing this position, the Fund relies entirely upon a single line in *U.S. Fidelity & Guaranty Co. v. Industrial Commission*, 42 Ariz. 422, 434 (1933), stating that the statutory employer has "a primary and not a secondary liability for compensation" of an injured worker's claim.

¶14    *U.S. Fidelity* does not support the Fund's contention that Estopellan is less liable than other employers. There, the court affirmed the ICA's award holding both the direct and statutory employers jointly and severally liable for the injured worker's claim. *Id.* at 435. The line upon which the Fund relies stands only as a rejection of the statutory employer's argument that its liability is secondary to that of the direct employer. *See id.* Indeed, our supreme court later clarified:

> Where two or more persons are employers of the same employee engaged, as here, for the common benefit of both, and so found and determined by the proper tribunal, their liability is joint and common. The liability of one employer is not secondary to the other. Both are primarily liable.

*Ocean Accident & Guar. Corp. v. U.S. Fid. & Guar. Co.*, 63 Ariz. 352, 362-63 (1945) (citations omitted). Accordingly, the ICA correctly found that all of Reyes's employers were jointly responsible for the claim.

## III. The ALJ Must Evaluate the Liability of Each Contractor and Subcontractor Named in the Action.

¶15    MC and the Fund argue the ALJ erred by failing to consider whether YB and GFC were also subject to liability for payment of Reyes's workers' compensation claim as statutory employers under A.R.S. § 23-902(B). Pursuant to this section:

> When an employer procures work to be done for the employer by a contractor over whose work the employer retains supervision or control, and the work is a part or process in the trade or business of the employer, then the contractor[] and the contractor's employees, and any subcontractor and the subcontractor's employees, are, within the meaning of this section, employees of the original employer.

*Id.* Thus, a so-called statutory employer "is required to provide workmen's compensation [insurance] for its remote employees, just as is required of direct employers." *Young v. Envtl. Air Prods., Inc.*, 136 Ariz. 158, 161 (1983) (citing A.R.S. § 23-902(A)); *see also U.S. Fid.*, 42 Ariz. at 435. The statutory employer provisions exist to prevent unscrupulous employers from evading responsibility under the Act "through the aid of various dummy intermediaries." *Grabe v. Indus. Comm'n*, 38 Ariz. 322, 328 (1931); *see also Basurto v. Utah Constr. & Mining Co.*, 15 Ariz. App. 35, 41 (1971) (explaining that the purpose of imposing liability upon the statutory employer is "to prevent evasion of the Act by an employer through the device of subcontracting its regular operations and thereby avoiding direct employment relations with the workers and making them dependent on their immediate employer for compensation") (quoting *Jamison v. Westinghouse Elec. Corp.*, 375 F.2d 465, 468 (3d Cir. 1967)).

**¶16** Appellants do not dispute the ALJ's finding that MC was a statutory employer but argue that this conclusion does not foreclose consideration of YB's and GFC's liability. Whether an employee may have multiple statutory employers under the Workers' Compensation Act requires us to interpret and apply statutes, a task we undertake *de novo. Buehler v. Retzer ex rel. Indus. Comm'n*, 227 Ariz. 520, 521, ¶ 4 (App. 2011) (citing *Baker v. Dolphin Beach Rental & Mgmt., L.L.C.*, 224 Ariz. 523, 524, ¶ 6 (App. 2010)). "Our goal in statutory interpretation is to effectuate the legislature's intent." *SolarCity Corp. v. Ariz. Dep't of Revenue*, 243 Ariz. 477, 480, ¶ 8 (2018) (citing *State ex rel. Dep't of Econ. Sec. v. Pandola*, 243 Ariz. 418, 419, ¶ 6 (2018)). "The best indicator of that intent is the statute's plain language, . . . and when that language is unambiguous, we apply it without resorting to secondary statutory interpretation principles." *Id.* Although the Act should be construed liberally in favor of protecting the employee, "[t]he court may 'not impose burdens and liabilities which are not within the terms or spirit' of the Act." *Putz*, 203 Ariz. at 150-51, ¶ 24 (citing *Ocean Accident & Guar. Corp. v. Indus. Comm'n*, 32 Ariz. 265, 271-72 (1927), and then quoting *Bergstresser v. Indus. Comm'n*, 13 Ariz. App. 91, 93 (1970)).

**¶17** The Workers' Compensation Act defines the statutory employer in terms of the nature of the work procured and the level of supervision or control retained over the work. *See* A.R.S. § 23-902(B); *Young*, 136 Ariz. at 161. The plain language of the Act does not limit the classification to a single link in a chain of contractors and subcontractors. *See Faraghar*, 184 Ariz. at 532 ("Nothing in [A.R.S. § 23-902(B)] suggests that the original employer's responsibility is *exclusive*, or that the independent contractor is thereby relieved of liability for benefits."); *Hamrick v. Indus. Comm'n*, 15 Ariz. App. 277, 279 (App. 1971) ("[A] determination by an

award that a workman is an employee of a subcontractor does not preclude a subsequent determination that this same workman is an employee of the original contractor."). Rather, the Act explicitly contemplates an umbrella of liability under the statutory employer that covers "the contractor[] and the contractor's employees, and any subcontractor and the subcontractor's employees" if the criteria set forth in A.R.S. § 23-902(B) are met. A.R.S. § 23-902(B); *see also Basurto*, 15 Ariz. App. at 41 (announcing "the general rule of thumb . . . that the [statutory employer] statute covers all situations in which work is accomplished which this employer, or employers in a similar business, would ordinarily do through employees") (citation omitted).

**¶18**     The broad language of the statute is consistent with the overriding purpose of the Workers' Compensation Act: to protect the employee. *Young*, 136 Ariz. at 163 (quoting *U.S. Fid.*, 42 Ariz. at 430); *see also Putz*, 203 Ariz. at 150-51, ¶ 24 (describing the Act's purpose to "hav[e] industry bear its share of the burden of human injury as a cost of doing business") (citing *Ocean Accident*, 32 Ariz. at 271-72). We accomplish this goal by liberally construing the Act to impose liability for payment of benefits, which includes spreading the cost of injury amongst all those who retain supervision and control over work that is part of their business. *See Young*, 136 Ariz. at 163 (citing *U.S. Fid.*, 42 Ariz. at 430). This goal is not met, however, when an employer retains a level of control over its remote employees but is relieved of responsibility for their industrial accidents.

**¶19**     YB nonetheless urges this Court to adopt the "first responsible contractor" rule, which designates "the lowest insured party on the chain to be the singular statutory employer." We decline to do so. Nothing within Arizona's Workers' Compensation Act supports such a rule, and the jurisdictions that have adopted it have done so under statutory schemes that, unlike Arizona's, impose liability for workers' compensation claims upon a statutory employer only if the direct employer is un- or underinsured. *See, e.g.*, *Minnaugh v. Topper & Griggs, Inc.*, 416 N.Y.S.2d 348 (App. Div. 1979); *Peck v. Delaware Cty. Bd. of Prison Inspectors*, 814 A.2d 185 (Pa. 2002); *Brogno v. W & J Assocs., Ltd.*, 698 A.2d 191 (R.I. 1997). Adopting the first responsible contractor rule would also create a disincentive for employers to secure workers' compensation insurance to cover remote employees, which is entirely inconsistent with the obligations imposed by A.R.S. § 23-902(B).

**¶20**     The Act requires the ALJ to evaluate the liability of each contractor and subcontractor made a party to a workers' compensation

proceeding under A.R.S. § 23-902(B).[3] The ALJ erred in failing to do so here. Because the record contains conflicting evidence regarding the level of supervision and control YB and GFC retained over MC, Estopellan, Reyes, and Lot 31, we cannot resolve the question as a matter of law. *See Home Ins. v. Indus Comm'n*, 123 Ariz. 348, 350 (1979) (describing several non-exclusive factors to consider when determining whether a person or entity is a statutory employer).

## CONCLUSION

¶21        The ICA's decision and award are set aside.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

3        Although contractors and subcontractors may choose to require indemnification via the terms of their contracts, the indemnification provisions do not control over the rights and duties prescribed by the Workers' Compensation Act. *See U.S. Fid.*, 42 Ariz. at 434-35 (holding the statutory employer responsible for compensating the injured employee notwithstanding an indemnification clause in the contract between the statutory and direct employers).