NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

HAMZAH IBRAHIM, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

MKTS LLC, *Respondent Employer*,

SPECIAL FUND DIVISION/NO INSURANCE SECTION,
*Respondent Party in Interest.*

No. 1 CA-IC 24-0004

FILED 10-08-2024

Special Action - Industrial Commission
ICA Claim No. 20213340180
The Honorable Rachel C. Morgan, Administrative Law Judge

**AFFIRMED**

COUNSEL

Broening Oberg Woods & Wilson PC, Phoenix
By Kelley M. Jancaitis, Brian A. Weekley
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent*

James F. Mahoney PLC, Scottsdale
By James F. Mahoney
*Counsel for Respondent Employer*

Arizona Attorney General's Office, Phoenix
By Sophia Cox
*Counsel for Respondent Party in Interest*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Andrew M. Jacobs joined.

---

**T H U M M A**, Judge:

**¶1**        This case turns on whether Hamzah Ibrahim was an employee of MKTS, LLC., when he was injured. Following an evidentiary hearing, an Industrial Commission of Arizona (ICA) Administrative Law Judge (ALJ) determined that Ibrahim was an independent contractor, not an employee, and on that basis denied his claim. Because Ibrahim has shown no error, the award is affirmed.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Ibrahim was seriously injured when a semi-tractor trailer truck he was driving rolled over while on a haul for MKTS, a general freight carrier. It was Ibrahim's first trip working as a driver for MKTS. He filed a claim with the ICA, but MKTS denied responsibility arguing Ibrahim was not an employee. MKTS based its denial on a "Company Truck Driver Independent Contractor Agreement" that set forth terms of Ibrahim's status as a truck driver for MKTS.

**¶3**        At an evidentiary hearing, both Ibrahim and MKTS' owner Mazin Jardak testified about the relationship. The ALJ did not find Ibrahim's testimony to be credible and found Jardak's testimony was credible. This court defers to those determinations, viewing the facts in a light most favorable to upholding the award. *See Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105 ¶ 16 (App. 2002). Application of the law to those facts, however, is reviewed de novo. *See Young v. Indus. Comm'n*, 204 Ariz. 267, 270 ¶ 14 (App. 2003).

¶4          The evidence received at the hearing shows that MKTS is a long-distance trucking company. In September 2020, Ibrahim and MKTS entered into the Agreement to provide services described as "Truck Driver." Although Ibrahim would be paid weekly, the Agreement included no rate of payment. The Agreement allowed MKTS to keep the final week's pay if sufficient notice was not provided. Ibrahim had to provide a vehicle and any equipment, tools and materials needed to perform the work. He was required to "follow the stated speed limits" and keep a paper log "on hand." He was also required to maintain a log "through truck tablets" and was prohibited from using a cell phone for that purpose. The Agreement also states that Ibrahim and those who work with him will comply with licensing and permitting requirements, that MKTS will not provide unemployment or workers' compensation insurance and that MKTS will not withhold payroll taxes.

¶5          Ibrahim could terminate the Agreement at any time with 14 days' written notice. MKTS could terminate the Agreement immediately without notice for any "act exposing [MKTS] to liability to others for personal injury or property damage, causing delay in delivery, being not on time for work schedule." Jardak testified that he explained the Agreement to Ibrahim before he signed it. Although the Agreement states that it was to take effect on the signatures of both parties only Ibrahim signed the Agreement.

¶6          MKTS retained Ibrahim after he passed drug screening and driving tests. At that time, Ibrahim had a commercial driver's license and a required medical certificate but did not own a truck. Two months after signing the Agreement, Ibrahim contacted Jardak and said he was ready to work. MKTS then leased a truck from Penske (a company Ibrahim selected) and subleased that truck to Ibrahim, which Ibrahim intended to use to make runs between Phoenix and Salt Lake City. MKTS installed electronic equipment in the truck that tracked and logged mileage as required by federal law.

¶7          Jardak testified that drivers typically are paid 85 percent of the price MKTS charges its customers per trip, with MKTS keeping the remainder. Ibrahim was required to make truck lease payments and reimburse MKTS for the electronic log equipment rental. Ibrahim purchased fuel using an MKTS card and reimbursed MKTS. Those are considered "expenses" of driving. Ibrahim also reimbursed MKTS for cargo liability insurance it supplied. Jardak testified that MKTS held the last payment for two weeks after a driver stops working in case the driver receives a traffic ticket.

¶8            Jardak emphasized that drivers can decline trips and need not drive exclusively for MKTS. Ibrahim was injured during a one-way delivery to Utah. Had Ibrahim wanted to haul freight on the return trip, he would have to get another load from MKTS or another carrier.

¶9            MKTS argued that Ibrahim was an independent contractor because MKTS had no right to control how Ibrahim accomplished the task for which he was hired – the transfer and delivery of goods. MKTS contended that any requirements imposed on Ibrahim were mandated by federal regulations regarding motor carriers hauling freight. MKTS emphasized that Ibrahim could "grow [his] fleet" of trucks and hire drivers who drove for him, like other independent contractors. Ibrahim countered that MKTS was not entitled to the statutory presumption in favor of an independent contractor relationship because the written Agreement did not comply with A.R.S. § 23-902(D). He also argued he was an employee because the services he was providing were "integral" to MKTS' business and because MKTS "cannot contract [] out the very heart of [its] business." The Special Fund also argued Ibrahim was an employee based on factors it contended showed MKTS had the right to control Ibrahim's work.

¶10           The ALJ concluded that Ibrahim was not MKTS' employee. The ALJ cited multiple factors showing Ibrahim's independence, including: (1) entering the Agreement but not reporting for work until two months later; (2) providing his own truck subleased from MKTS; (3) choosing the truck rental company; (4) expenses being deducted from payment and (5) MKTS did not require certain routes or hours. The ALJ also noted that Ibrahim agreed to obtain his own workers' compensation coverage. Accordingly, the ALJ concluded that a statutory rebuttable presumption of independent contractor status applied, *see* A.R.S. § 23-902(D), and ruled in MKTS' favor.

¶11           In requesting reconsideration, Ibrahim again argued that the Agreement did not meet statutory requirements and could not support the presumption of independent contractor status. Most notably, both parties did not sign the Agreement. He then re-urged his argument that the relationship between MKTS and himself had the earmarks of an employer-employee relationship. After MKTS responded, the ALJ summarily affirmed. This statutory special action followed.[1]

---

[1] The Special Fund Division/No Insurance Section of the ICA did not submit argument to this court.

**DISCUSSION**

**¶12**        This court defers to the factual findings of the ALJ but reviews questions of law de novo. *See Young*, 204 Ariz. at 270 ¶ 14. The court may independently assess whether an injured worker is an employee or an independent contractor based on the totality of facts and circumstances. *Cent. Mgmt. Co. v. Indus. Comm'n*, 162 Ariz. 187, 189 (App. 1989) (citing cases). The language of a contract between a company and an injured individual is not determinative, but it is one factor to consider. *Santiago v. Phoenix Newspapers, Inc.*, 164 Ariz. 505, 508 (1990) (citing cases). To further the remedial purposes of workers' compensation law, courts interpret the term "employee" broadly and liberally. *See Schaeffer Trucking v. Indus. Comm'n*, 141 Ariz. 408, 410 (1984). A court, however, should not "impose burdens and liabilities which are not within the terms or spirit of the [workers' compensation statutes]." *Meno's Constr., L.L.C. v. Indus. Comm'n*, 246 Ariz. 521, 526 ¶16 (App. 2019) (citations omitted) (internal quotation omitted).

**¶13**        "An independent contractor is not an employee [under] workers' compensation law." *Danial v. Indus. Comm'n*, 246 Ariz. 81, 83 ¶ 12 (App. 2019). Arizona's workers' compensation law defines an employee as a worker whose work "is a part or process in the trade or business of the employer" and over whose work the hirer retains supervision or control. Ariz. Rev. Stat. (A.R.S.) § 23-902(B)(2024).[2] An independent contractor, by contrast, is a worker who is "not subject to the rule or control" of the hirer and is "engaged only in the performance of a definite job or piece of work." A.R.S. § 23-902(C). "The distinction between an employee and independent contractor . . . rests on the extent of control the employer may exercise over the details of the work." *Cent. Mgmt. Co.,* 162 Ariz. at 189. This requires consideration of the "totality of the facts and circumstances of each case, examining various indicia of control." *Anton v. Indus. Comm'n,* 141 Ariz. 566, 571 (App. 1984) (quoting *Home Ins. v. Indus. Comm'n of Ariz.,* 123 Ariz. 348, 350 (1979)).

**¶14**        When an independent contractor relationship is desired, the parties may enter into a written agreement that complies with A.R.S. § 23-902(D). Among other things, A.R.S. § 23-902(D) requires that both parties sign the independent contractor written agreement. The Agreement here is signed by Ibrahim but not MKTS. Thus, it does not comply with subsection (D). Nor does the statute allow for "substantial" compliance; to fully benefit

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

from the statutory presumption, subsection (D) requires "a fully completed written agreement that satisfies the requirements" of that statute. A.R.S. § 23-902(D). The ALJ, therefore, erred by applying the statutory presumption.

¶15 Because this court makes a de novo decision on the legal question of the parties' relationship, that error is not dispositive here. This court will analyze the relationship under A.R.S. § 23-902(B) and (C), which focuses on the right to control the worker. Thus, we consider the evidence without applying the subsection (D) presumption.

¶16 In *Home Insurance,* the Arizona Supreme Court identified factors indicating the right to control, noting that none are conclusive:

> duration of employment; the method of payment; who furnishes necessary equipment; the right to hire and fire; who bears responsibility for workmen's compensation insurance; the extent to which the employer may exercise control over the details of the work; and whether the work was performed in the usual and regular course of the employer's business.

123 Ariz. at 350. In addition,

> any supervision or control exercised by an employing unit to comply with any statute, rule or code adopted by the federal government, this state or a political subdivision of this state or any requirement of licensing, professional or ethical standards may not be considered for the purposes of determining the independent contractor or employment status of any relationship or individual for the purposes of this title.

A.R.S. § 23-1602. Therefore, compliance with federal law (including federal motor carrier requirements) is not an indication of control by MKTS.

¶17 The most significant factor favoring an employer-employee relationship here is the nature of Ibrahim's work. Ibrahim's work as a driver for MKTS was in the usual and regular course of MKTS' long-haul trucking business, not incidental or ancillary to it. That said, very little indicia of control are present here. Ibrahim was responsible for supplying a vehicle

and all tools necessary to complete the work. The fact that he leased a truck and other equipment from MKTS, and borrowed funds from MKTS for fuel purchases, does not favor an employee relationship, as Ibrahim remained legally responsible for those necessities. Neither do the delivery time and place requirements indicate MKTS control, as those details are dictated by the nature of the work. MKTS did not mandate specific routes or driving hours. Any requirements by MKTS were those mandated by motor carrier regulations.

¶18        Ibrahim argues that the misapplication of the presumption affected the ALJ's credibility findings. The record, however, does not support that argument. The record also fails to support Ibrahim's argument that MKTS exercised any more control than was necessary to comply with motor carrier regulations. Furthermore, several facts that Ibrahim contends are evidence of an employer-employee relationship are not, such as MKTS' transportation of Ibrahim from Las Vegas to Phoenix to fill out employment paperwork, assisting Ibrahim with English translation of documents, procuring his preferred route to provide full-time work, or Ibrahim's move from Las Vegas to Arizona to start work for MKTS.

¶19        Citing *Anton* and *Central Management*, Ibrahim contends that because he was hired to provide services that are the "very heart" of MKTS' business—long haul trucking—that single factor by itself outweighs the other factors tending to show an independent contractor relationship. The law, however, is to the contrary. The nature of the work is one of several factors to weigh and balance, even if it might weigh heavily at times. The fundamental test is the right to control how the work is performed: "The right to control or supervise the method of reaching a specific result determines whether an individual is an employee or an independent contractor." *Home Ins.*, 123 Ariz. at 350. "In deciding whether a worker is an employee we look to the totality of the circumstances and the indicia of control." *Santiago*, 164 Ariz. at 510.

¶20        In *Anton*, a woodcutting business hired a woodcutter and, after the woodcutter was injured, the woodcutting business claimed the woodcutter was an independent contractor. *See* 141 Ariz. at 568. The court recognized the woodcutter was hired to perform an integral part of the hirer's regular business. *Id.* at 573. In that circumstance, the court noted "the relative nature of the [woodcutter]'s work bears heavily on the question of whether the [woodcutter] is an employee or an independent contractor." *Id.* at 572. The court noted the substantial control the business exercised over the woodcutter, even requiring the woodcutter to use a saw and not an axe. *Id.* at 570-71. The court concluded the woodcutter's job was "an ongoing

basic employment activity of the business owner as opposed to an incidental part of the owner's normal operation," *id.* at 573, to find the woodcutter was an employee and not an independent contractor, *id.* at 574.

**¶21** In *Central Management*, a taxi service operated, maintained, controlled and presented to the public vehicles that were leased as the usual and regular course of its business. 162 Ariz. at 190-91. Drivers who leased vehicles from the taxi service were thus engaged in the regular course of the taxi service's business and not simply leasing the vehicles. *Id.* That factor, along with "additional indicia of control," justified affirming the ALJ's determination that the drivers were employees rather than independent contractors. *Id.* at 191-92.

**¶22** Outside the core function of Ibrahim's work, there are no significant indicia of control by MKTS. Setting aside federal regulation mandates, as Arizona law requires, and the requirements integral to the task itself (such as specific times for pickup and delivery and destinations), MKTS had minimal rights to control Ibrahim and how he accomplished his work. He was not limited to a particular route or specific times to drive. He was free to deliver the cargo in any way that ended in a timely, undamaged arrival at the destination. He was not required to lease a truck from MKTS and was free to use some other vehicle, either borrowed, bought or leased. And while MKTS allowed him to use its fuel card, Ibrahim was responsible for reimbursing that cost. MKTS did not supply any of Ibrahim's costs of doing business.

**¶23** Under Arizona worker's compensation law, the evidence here does not show that MKTS had a right to control Ibrahim's work to the extent that an employer-employee relationship was created rather than the independent contractor relationship urged by MKTS.

**CONCLUSION**

**¶24** The award is affirmed.

